COMMONWEALTH vs. WILLIAM H. FORD.
SAME vs. SAME.

Suffolk. Nov. 22, 1880. — Jan. 5, 1881. LORD & SOULE, JJ., absent.

A witness may be allowed, for the purpose of refreshing his recollection of what was said at a particular time, to look at a printed copy of his own written report of the proceedings at that time, although the absence of the written report is not accounted for.

TWO INDICTMENTS : the first charging the defendant with the larceny of a quantity of oil, on December 13, 1879, at Boston; the second charging the defendant with an assault upon George F. McCausland, a police officer, at the same time and place. The cases were tried together in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions in substance as follows:

The alleged assault was made at the time the officer arrested the defendant in the act of carrying away the oil which he is charged with stealing. The defendant contended that whatever assault he committed upon the officer was committed in the lawful defence of his own person against an unjustifiable attack upon him by the officer, and also contended that the testimony of the officer, as to certain statements made to him by the defendant, at the time of his arrest, relative to the oil, where he got it, and what he was going to do with it, was not true.

McCausland was called as a witness by the government, and testified against the defendant upon both charges; and he was asked, upon cross-examination, if he did not strike the defendant and knock him down with his billy, to which he answered, "No." He was then asked if he had never stated that he had struck the defendant and knocked him down with his billy, to which he answered, "No."

The defendant called as a witness one Stevens, for the purpose of contradicting McCausland, and showing that McCausland had stated to him that he did strike the defendant and knock him down with his billy, and offered to show by Stevens that he was the regular reporter for the Boston Herald of the daily proceedings in the Municipal Court of Boston, for the

transaction of criminal business; that he reported the proceedings in that court for the day when the defendant was examined upon these charges; that McCausland testified in said court at that time, and, in addition to such testimony, made certain statements to the witness at the time; that the witness made his report of the proceedings of that day in part from the testimony in the case, and in part from the statements which McCausland made to him; that the report, as so made by the witness, was printed in the evening edition of the Herald for that day; and that the original written report of the witness was destroyed.

The defendant asked the judge to allow him to prove the above facts, and to allow the witness to use said printed report for the purpose of refreshing his recollection as to McCausland's testimony on the day in question. But the judge declined so to do; ruled that it was incompetent for the witness to use the printed report for such purpose; and excluded the evidence offered.

The government, by consent, then asked the witness if he had made search for his original written report. The witness answered that he had not made such search, but supposed that the report was destroyed; that he had made the report, and that he knew it was printed substantially as made by him; and that he had testified in his direct examination as to McCausland's statements to him from his recollection, and did not remember that McCausland said in court that he struck and knocked the defendant down with his billy. The defendant then proposed to show by the witness that it was the usage of the Herald office to destroy all such original written reports. The judge excluded the evidence.

The jury returned a verdict of guilty upon both indictments, and the defendant alleged exceptions.

*H. E. Swasey & G. R. Swasey*, for the defendant.

*F. H. Gillett*, Assistant Attorney General, (*G. Marston*, Attorney General, with him,) for the Commonwealth.

ENDICOTT, J. The ruling in this case, whereby the witness was precluded from looking at the printed report in the Boston Herald to refresh his memory, seems to have been made on the ground that the witness could not be allowed to refresh his memory from a printed copy of his own written report.

We are of opinion that this ruling was erroneous; and that the witness should have been allowed, for the purpose of refreshing his memory, to look at the printed report, which he stated, as of his own knowledge, was printed substantially as made by him. It was not contended that the written or printed report, or any portion of its contents, could be put in evidence. It was clearly incompetent, in any aspect of the case, as presented. The rule, therefore, that, to prove by oral testimony the contents of a paper, relied on as evidence, it is necessary first to show that it has been lost or destroyed, or that upon diligent search it cannot be found, has no application to this case. If such rule did apply, it is difficult to see why it was not competent for the defendant to prove that it was the custom in the Herald office to destroy all such original written reports after printing them; but that question it is not necessary to consider.

In order to refresh the recollection of a witness, it is not important that the paper, book, or memorandum should have been written or printed by the witness himself, or that it should be an original writing. It is sufficient if he saw it while the facts stated therein were fresh in his memory, and he knows that they are correctly transcribed or printed. Upon inspecting it, he can state the facts if thereby called to his recollection. 1 Greenl. Ev. §§ 436–439. *Chapin* v. *Lapham*, 20 Pick. 467.

In *Coffin* v. *Vincent*, 12 Cush. 98, which was trespass for taking and carrying away certain sheep, the defendants attempted to prove that the sheep were taken by them as field-drivers, while running at large, and for that cause were taken up and impounded. To prove this, they called a witness to show the contents of the notice posted up by them as field-drivers, which notice had been lost or destroyed; and in testifying to its contents it was held that the witness could refresh his recollection by referring to a form of such notice, which, though not made by himself, he had compared with the notice posted up, and found them to correspond. In that case, the general rule applicable here is well stated, though the case differs from this in the fact, that the contents of an original paper were sought to be proved, and therefore it was necessary to show that it had been lost. In this case, the original written report of the witness could not have been used in evidence. In *Kensington* v. *Inglis*,

8 East, 273, a license to trade with the enemy had been lost. A witness was called, who had made an entry of it in his memorandum-book, for the private information of himself and his employer, which book was not produced in evidence; and it was held that the witness might testify to the contents of the license from memory, although the book was not produced, for, if in court, it would not have been evidence *per se*, but could have been used by the witness only to refresh his memory.

The case most nearly resembling the case at bar is *Horne* v. *Mackenzie*, 6 Cl. & Fin. 628. A surveyor made a survey and report, which he furnished to his employers, and being called as a witness he produced a printed copy of this report, on the margin of which he had two days before, to assist him in giving his explanations as a witness, made a few jottings. The printed report had been made up from his own original notes, of which it was in substance, though not in words, a transcript, and it was held that he might look at the printed copy to refresh his memory. In *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355, 619, a witness was allowed to use a copy of his own memorandum made by another person in his presence. In *Burton* v. *Plummer*, 2 A. & E. 341, a clerk of a tradesman entered the transactions in trade, as they occurred from his own knowledge, and the tradesman copied them into a ledger in the presence of the clerk, who checked them as they were copied. It was held that the clerk might use the entries in the ledger to refresh his memory, though the waste-book was not produced nor its absence accounted for, the entries in the ledger having been made as by the clerk himself. It was in the nature of a duplicate original, and is similar to the case at bar, where the written report of the witness was printed in the newspaper, to his own knowledge substantially as made by him. See also *Burrough* v. *Martin*, 2 Camp. 112; *Wood* v. *Cooper*, 1 Car. & K. 645; *Doe* v. *Perkins*, 3 T. R. 749; *Regina* v. *Langton*, 2 Q. B. D. 296.

In *Huff* v. *Bennett*, 2 Selden, 337, it was said, "It is not necessary that such writing should have been made by the witness himself, or that it should be an original writing, provided after inspecting it he can speak to the facts from his own recollection." So a witness may be allowed to refresh his memory from notes taken by counsel at a former trial; *Regina* v. *Philpotts*,

5 Cox C. C: 329; or from his deposition, or a copy of the same. *Smith* v. *Morgan*, 2 Mood. & Rob. 257. *George* v. *Joy*, 19 N. H. 544. .And in *Henry* v. *Lee*, 2 Chit. 124, where a witness was allowed to refresh his memory from a document not written by him, Lord Ellenborough said, " If upon looking at any document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum was written by himself, for it is not the memorandum that i, the evidence, but the recollection of the witness."

*Exceptions sustained.*