DENVER & RIO GRANDE RAILROAD COMPANY, APPELLANT,
v. WILSON, APPELLEE.

<div style="float:right">4   355<br>10  447</div>

1. PRESUMPTION—PAYMENT.'

In an action to recover an amount claimed to be due as wages it is, upon proof of the amount earned, a presumption of law that it remains due and unpaid. Payment, set-off, or anything which might go in reduction or extinguishment of the claim, is matter of defense.

2. EVIDENCE.

For the purpose of refreshing his memory and enabling him to state with accuracy facts concerning which he has independent knowledge, a witness may be allowed to refer to memoranda taken from a book kept by him, although the original book itself is not produced.

3. SAME.

Even where the contents of a written instrument are directly in issue, parol admissions by a party to the suit relating to its contents may be introduced, not as secondary, but as primary evidence; so may letterpress copies of writings made by his agent in the course of his duties.

*Appeal from the County Court of Pueblo County.*

Messrs. Wolcott & Vaile and Mr. Henry F. May, for appellant.

Messrs. Deasy & Higgins, for appellee.

Thomson, J., delivered the opinion of the court.

The appellee was plaintiff below. He brought this suit against the railroad company upon the demands of four men, employees of the company, for one month's wages due each; and which, as he claimed, had been sold and assigned to him. The only evidence in the case was that introduced by the plaintiff. The defendant offered none. Plaintiff had judgment and the defendant appealed.

A question is made as to the amount and character of proof required of the plaintiff to establish his claim, and entitle him to judgment. By the terms of the instrument of transfer in each case, the assignor sold, assigned, transferred and set over all his right, title and interest, for work and labor performed for the company during the month specified. It is objected that this does not purport to assign any definite sum, or even the earnings; but that its effect is to transfer only what might be due the assignor at the date of the assignment; and that, therefore, it was incumbent upon the plaintiff to show what the interest of each assignor was at that date; which would necessitate proof on his part that the claims had not been paid, or that they were not extinguished by some other matters of account between the assignors and the defendant. We cannot assent to this proposition. We think the effect of the assignment was to transfer to the plaintiff the wages of the assignors for the time mentioned. Upon proof of the amount earned by each, the presumption of law is that it remained due and unpaid; and payment, set-off, or anything else which might go in reduction or extinguishment of the claims, was matter of defense.

The amounts earned by Moorehouse, Minckler and Lambert, three of the assignors, is shown by the testimony of

John Kelker.  He states that he was master mechanic of the defendant; that he kept the time of these persons, as also of other employees; that he had a book in which he kept the number of days each man worked during the month, and knew what work each had done, and the pay he was to receive.  He produced in court a memorandum which he had personally taken from this book, and in his testimony referred to that for the purpose of fixing the amount of work performed.  This manner of testifying is objected to.  Counsel say that the book itself was the best evidence, that its production might have been compelled, and that therefore the memorandum or copy was incompetent.  If the copy had been offered in evidence, there would have been force in the objection; but it is manifest that it was used only to assist the memory of the witness; and to enable him to state facts with accuracy, concerning which he had independent knowledge.  That being the sole use made of the memorandum, it was competent for the purpose; and it was not necessary to produce the book itself in court.  The rule requiring the absence of an original writing to be accounted for, before its contents can be shown, has no application here.  1 Greenl. Ev. § 437; *Commonwealth v. Ford*, 130 Mass. 64; *Erie Preserving Co. v. Miller*, 52 Conn. 444.

For the purpose of showing the amount earned by Shumacher, another of the assignors, the plaintiff placed upon the stand J. J. Burns, superintendent of the southern division of the railroad, and in charge of the affairs of that division.  He produced a book which he called an impression book, and which, against the defendant's objection, was permitted to be introduced in evidence.  It appears that the time of the class of employees to which Shumacher belonged was kept by the trainmaster in a book which he had in his office for that purpose.  It was his duty to make up from that book a timesheet, and send it to the office of the witness, who then took a letterpress copy of it, which he kept in his office, and forwarded the original to the Denver office, where the pay-roll of the men was made out.  The time-sheet showed the number

of days worked during the month by the several men whose time it embraced. The letterpress copy was the impression book mentioned. The witness had no personal knowledge of Shumacher having been in the company's employ, but it appeared from the impression book that he was a brakeman; and from the time which it showed him to have worked during the month in question, and from witness' own knowledge of the rate of pay of the different classes of employees, he testified to the amount of Shumacher's earnings for that period. The book was objected to as evidence, on the ground that, being a copy, it was not primary evidence, and that no foundation had been laid for its introduction as secondary evidence. Section 356 of the Code provides that there shall be no evidence of a writing other than the writing itself, except in certain cases, among which is the possession of the original by the party against whom the evidence is offered, and his failure to produce it after reasonable notice. This section is merely declaratory of the common law; and to determine its applicability to this case, it will be necessary to ascertain whether the time-sheet in question, or the book from which it was taken, was such a writing as the section contemplates. Mr. Greenleaf, in discussing the rule governing the admissibility of secondary evidence of the contents of written instruments, arranges them into three classes: First, those instruments which the law requires to be in writing; second, those contracts which the parties have put into writing; and third, all other writings, the existence of which is disputed, and which are material to the issue. 1 Greenl. Ev. § 85. In the cases enumerated, the rights of parties depend upon, and are to be measured by the writing; or it contains something which is essential to a just determination of a controverted question; so that, in order to a proper adjudication of the issues, its contents must be ascertained. For this purpose the writing itself is the best evidence, and secondary evidence of its contents is admissible only upon the inability to produce the original, due to some cause which the law specifies. But the writing in question here does not

fall within any of the enumerated cases. It was not a contract between the parties. No rights or remedies were dependent upon its existence. As a writing merely, it was not material to any issue in the case. It did not contain anything which it was legally necessary should be in writing. It was conclusive of nothing, and need not have been used as evidence at all. All that appeared from it could have been as well proven by the testimony of Shumacher, if he had been present in court, or by that of any other person who knew the facts; and if such testimony had been inconsistent with it, a verdict for the plaintiff would not have been set aside merely for that reason. It was a writing made by the defendant for its own convenience, and for accuracy in the transaction of its business; and the only purpose for which it was receivable in evidence was to show an admission against interest by the defendant. Even where a written instrument is a necessary part of the case, and its contents are directly in issue, parol admissions by a party to the suit, relating to its contents, may be introduced, not as secondary, but as primary evidence. *Taylor v. Peck*, 21 Grat. 11; *Slatterie v. Pooley*, 6 M. & W. 664; *Smith v. Palmer*, 6 Cush. 513; *Loomis v. Wadhams*, 8 Gray, 557. But it is not necessary to invoke this rule here, because the admission contained in the time book had no relation to a written instrument, but related to a fact which might as well be established by any other competent proof.

There is no reason why a party may not repeat an admission made by him against himself. In such case, each separate repetition would be a new admission, provable independently of any former admission; and if the admission was contained in a writing made by him, which he afterwards copied, the copy would answer the same purpose as the original, upon proof that it was his work. He could not repudiate it because it was a copy, and demand the production of the first writing, because the one being a repetition of the other, and each being his own act, the same admission is contained in both. A corporation can act only through its officers and

agents. Their acts, done within the scope of their authority, are its own acts. The original book was made by defendant's agent in the course of his duties; in the same capacity he made the time-sheet and sent it to the superintendent, who made the copy for preservation in his office, as pertaining to the affairs of his division; and it is immaterial whether it was made by a letterpress or by a slower and more tedious process. It was still a copy made by him as superintendent of the company. The time book, time-sheet and impression book were therefore the time book, time-sheet and impression book of defendant; and either might be used in evidence as the defendant's admission of the same fact.

We find no error in the rulings complained of, and accordingly affirm the judgment.

*Affirmed.*