## KIPP, RESPONDENT, *r.* SILVERMAN ET AL., APPELLANTS.

(No. 1,303.)

(Submitted March 21, 1901.   Decided May 6, 1901.)

*Trover and Conversion—Pleading—Motion to ;Strike—Notice —Redundancy — Evidence — Contract — Letters — Witnesses — Refreshing Memory — Memoranda — Instructions—Burden of Proof—Trial—Cross-Examination.*

1. Notice of a motion to strike out part of an answer, set for hearing August 2d, but not called till the day of trial, in October of the same year, when both parties were present, was sufficient.

2. Where plaintiff alleged a wrongful levy on goods in possession of his agent, and the answer denied plaintiff's ownership, justifying the seizure thereof on a judgment execution against the agent as the owner of the goods, a further paragraph of the answer, alleging the agent's exclusive ownership, and that plaintiff was estopped from claiming any interest therein, because the goods were ·›n an Indian reservation,. the rules of which forbade plaintiff from selling at said place, was redundant, and hence properly stricken out.

3. Where plaintiff alleged a wrongful seizure of his goods in the hands of his agent, and the answer, denying his ownership, showed the agent's exclusive possession, management and control thereof, a contract of agency between plaintiff and the agent was properly admitted to rebut the presumption of the agent's ownership.

4. Where plaintiff alleged a wrongful seizure of his goods in his agent's possession on an execution against his agent as owner thereof, letters of plaintiff, ordering goods to be shipped and billed to the agent, with duplicate bills to himself, were not admissible, since they showed no title in plaintiff, and were, at most, extrajudicial declarations, consistent with plaintiff's statement under oath.

5. Code of Civil Procedure, Sec. 3375, provides that a witness is allowed to· refresh his memory respecting a fact by anything written by himself or under his direction at the time when the fact occurred, or when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing.   *Held,* that a witness was properly allowed to refer to a memorandum of articles as shown in evidence by the sheriff's return, on which the witness, before the trial, had extended the unit and gross cost price obtained by taking the prices from his cost book and price lists kept by himself, and adding the freight and insurance apportioned by percentage.

6. Memoranda used by a witness to refresh his memory as to the cost of goods are no evidence of the value thereof.

7. An instruction, in an action for damages for conversion of a stock of merchandise, that "the burden is on the plaintiff to show that at the times alleged he was the owner of, and entitled to possession of, the goods, etc., and that at said time defendant sheriff wrongfully and unlawfully levied on and sold said goods, to plaintiff's damage ; the burden is also on the plaintiff to show that the goods were of any greater value than $1,000, as

admitted by the answer, and that he has expended any sum necessarily in endeavoring to recover said property or the value thereof,"—correctly stated the law on the issues of the ownership of the property and its value.

8.  Where plaintiff sought to recover damages for conversion of a stock of goods, apparently in the exclusive possession of his agent, and an instruction was given that the burden of proof was on the plaintiff to show his ownership, a further instruction that the burden was on the defendants to show that, at the time of the levy and sale constituting the alleged conversion, the property was owned by the agent, was erroneous, as conflicting with the previous instruction, and incorrectly stating the law.

9.  In all cases where there is an issue as to title the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary, therefore, the obligation rests upon him throughout to sustain this burden by a preponderance of the evidence.

10.  Errors of the trial court in limiting the rights of cross-examination are cured by the subsequent admission of the evidence thus sought to be brought out.

11.  Under Code of Civil Procedure, Sec. 3376, courts should incline to extend, rather than restrict, the right of cross-examination.

*Appeal from District Court, Teton County; D. F. Smith, Judge.*

ACTION by Joseph Kipp against J. Silverman and Sol Cohen, co-partners, and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

*Mr. Thomas E. Brady* and *Mr. J. G. Bair,* for Appellants.

*Mr. M. M. Lyter,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

Action for damages for a conversion of a stock of merchandise.

The complaint alleges, in substance, that on August 22, 1896, the plaintiff was the owner and in possession of a stock of merchandise at Browning, in Teton county; that the defendant Zimmerman was then, and at the time this suit was begun, the sheriff of said county, and that all the defendants, except Silverman and Cohen, were sureties upon his official bond; that on or about August 18, 1896, the defendants Silverman & Cohen, having brought an action in the district court of

Teton county against one A. B. Hamilton, and having caused an attachment to be issued therein, placed the attachment in the hands of Zimmerman for service, and instructed and directed him to levy upon the stock of merchandise as the property of said Hamilton for the satisfaction of the judgment which they sought in that cause; and that on August 22, Zimmerman, acting under this writ, wrongfully seized and took the property from the possession of the plaintiff, and converted it to the use of himself and the other defendants, to the plaintiff's damage in the sum of $2,000. The defendants, answering jointly, deny the plaintiff's title and possession; allege that the goods were the property of Hamilton; admit a value of $1,000; and justify the seizure under the attachment issued in the action of Silverman & Cohen against Hamilton. They also allege a subsequent recovery of a judgment against Hamilton by Silverman & Cohen, and a partial satisfaction thereof by the proceeds of a sale of the property under execution by Zimmerman. The answer, when filed, also contained the following paragraph: "The defendants, further answering, allege it to be a fact that the said A. B. Hamilton was in the sole and exclusive possession of said stock of goods, had purchased the same in his own name, had them shipped in his own name, and was selling them and dealing with them without directions from any person, and was the sole owner thereof, and that he alone had license and permit to expose goods for sale at said place, and the plaintiff was estopped from claiming any interest therein, or from dealing therein, or handling the same, in any manner; that said goods were upon an Indian reservation, and the said A. B. Hamilton was handling and selling the same as a licensed post trader at said place, and that the rules of the department covering Indian reservations forbade the plaintiff, or any person other than the said A. B. Hamilton, from selling any goods at said place."

Upon the filing of the answer, counsel for plaintiff filed a written motion asking the court to strike out this paragraph, on the ground that it was "immaterial, irrelevant, redundant,

sham and frivolous." The motion was noticed for August 2, 1897, or as soon thereafter as it could be heard, but was not called for hearing until October 4, 1897, the date set for the trial. On that day the court heard and sustained the motion. Thereupon a trial was had, resulting in a verdict and judgment for plaintiff in the sum of $1,806.88, with costs. The defendants have appealed from the judgment and an order denying them a new trial.

1. Error is assigned upon the action of the trial court in striking out the last paragraph of the answer, on the ground that the defendants had no notice of the motion, and also upon the ground that the matter stated manifested an attempt on the part of the defendants to plead an estoppel, and therefore any defect therein could only be reached by demurrer. There is no merit in the assignment. Manifestly, the notice of the motion given defendants was sufficient for a hearing on August 2. It was also sufficient for any date thereafter, provided it was called up at the first opportunity, and at a time when counsel for defendants was present, as in fact he was, when the motion was heard; for the record shows that the motion was granted after argument by counsel for both sides. Indeed, we think the court would have been justified in striking out the paragraph upon its own motion, if brought to its attention at any time before or during the trial. The matters alleged were clearly redundant. The truth of them, as pleaded, if admitted or established by the evidence, would not be defense by way of estoppel (*Sweetman* v. *Ramsey,* 22 Mont.323, 56 Pac. 361), but would rebut the claim of title by plaintiff, and were therefore admissible as evidence, under the denials in the answer. (*Gallick* v. *Bordeaux,* 22 Mont. 470, 56 Pac. 961.) Such was the theory of the trial court, for the defendants were permitted, both upon cross-examination of the plaintiff and in the introduction of their own evidence, to go fully into the situation at Browning, and the relations sustained to the business by Hamilton.

2. The plaintiff testified, in substance, on direct examina-

tion, that he had had a store at Browning for two years or more prior to the date of the levy, and was the sole owner of it; that Hamilton was his clerk, and that one Haggerty was his head man and bookkeeper, with authority to buy and sell goods. On cross-examination he stated that he had been running two stores upon the Blackfoot Indian reservation, but that, owing to a change of rules by the interior department, he could no longer do so; that he thereupon employed Hamilton to run the store at Browning in his (Hamilton's) name in order to evade the rules of the interior department; that the goods shipped from wholesale houses were mostly shipped to plaintiff's other store, about six miles away, and were sent from there to the Browning store; that some of them were shipped directly to Hamilton in his own name, all of those going to the Browning store being marked "Agency Store;" that plaintiff usually ordered and personally paid for all goods shipped; that, when Hamilton made out orders for goods, plaintiff O. K.'d them all, but that Hamilton may have ordered some goods in his own name; that Hamilton managed the store absolutely when plaintiff was not there, extending credit and selling goods as he saw fit, as though the business was his own, but that he had no interest in the business other than as employee of plaintiff. Upon his redirect examination he was permitted to identify a written contract entered into between himself and Hamilton on June 15, 1896, under the terms of which Hamilton agreed to undertake the management of the store at Browning for one year as plaintiff's agent, at a salary of $100 per month. He also identified several letters purporting to contain orders for goods for the Browning store, bearing date from June 11 to June 24, 1896, and addressed to various wholesale dealers at Helena, Mont., St. Paul, Minn., and other places. Most of them contained a request that the goods be billed and shipped to Hamilton, with a duplicate bill to plaintiff, and that they be charged to plaintiff's account. In several instances it was explained that the plaintiff owned the store at Browning, but was permitted to have only one store upon the reservation, and

it was necessary that his name should not appear on the bills sent to Hamilton. To these letters, he stated, his name was signed by his bookkeeper, Haggerty, who had authority to order goods in his name. Thereupon the contract and the letters were all admitted in evidence as exhibits to plaintiff's testimony, over the objection of defendants, the grounds of objection to them being that they were immaterial and irrelevant, as not tending to establish ownership in plaintiff. The court, in overruling the objection, stated that unless it should be shown that the letters were actually sent to the firms to which they were addressed, and that goods were sent in obedience to the requests contained in them, they would be stricken out. Thereupon Haggerty was sworn as a witness, and, after stating fully the relation of Hamilton to the business of Browning, substantially as detailed by the plaintiff, testified that he wrote the letters and mailed them to the respective firms to which they were addressed, and that subsequently he wrote to these firms requesting that the letters be returned to him, which was done. There is no evidence in the record that any of the goods in the stock at Browning at the time the levy was made were obtained through any of these orders. At the close of plaintiff's case, defendants moved the court to strike out all the exhibits. The motion was denied. The defendants now contend that the exhibits should have been excluded as immaterial.

The contract between plaintiff and Hamilton was properly admitted. It tended to show the exact relation between them in the conduct and ownership of the business at Browning, and to this extent to rebut and destroy the presumption of ownership in Hamilton arising from his apparently exclusive possession, management and control. The letters, however, should have been excluded. They did not, in themselves, tend to show title in plaintiff, nor were they so connected by other proof in the case with any of the goods in the stock as to demonstrate that plaintiff purchased any of the goods through them. Viewed in the most favorable light, they are, perhaps to be construed

as extrajudicial declarations by the plaintiff consistent with his statements under oath. To a certain extent the plaintiff was impeached by his admissions that Hamilton was conducting the business in his own name by plaintiff's authority, and also that plaintiff had stated to some of the Indians on the reservation that he had no interest in the store. The courts in some of the states hold that, after a witness has been impeached by previous statements inconsistent with his testimony at the trial, he may be corroborated by evidence that he has given the same account before. But it is obvious that hearsay statements not under oath can add nothing by way of confirmation to what the witness says under oath. The inconsistent statement casts an imputation upon his credibility or memory, and this cannot be explained or repelled by evidence of a previous consistent statement, no matter how often it has been made. Such, in our opinion, is the better view, and the one more in accord with reason and authority. (2 Phil. Ev. (5th Am. Ed.) 814; 1 Greenl. Ev. Sec. 469; *People* v. *Doyell,* 48 Cal. 85; *Reed* v. *Railroad Co.,* 45 N. Y. 574; *McKelton* v. *State,* 86 Ala. 594, 6 South. 301; *Connor* v. *People,* 18 Colo. 373, 36 Am. St. Rep. 295, 33 Pac. 159, 25 L. R. A. 341.) To this rule one exception is recognized by the authorities cited. Where it is charged that the story of the witness is a fabrication, owing to an interest acquired in the result of the case subsequent to the time at which the statement in question was made, then the statement may be admitted, on the theory that it was disinterested, and therefore probably true. It is clear, however, that the plaintiff was prompted by the same motive at the time the letters were written as at the time of the trial; for, if the suggestion of counsel is correct that the motive of the witness at the trial was to shield Hamilton from the claims of his creditors, this was only another step in the plan entered into at the time the contract was made, in June, 1896. The exception stated, therefore, does not apply.

3. The goods in controversy consisted of a great variety of articles such as are usually kept in a country store. The

witness Haggerty gave evidence as to their value. On cross-examination he was questioned particularly as to each item. In order to expedite the somewhat tedious examination, and to assist the memory of the witness, the court permitted him to use a memorandum of the articles as shown by the sheriff's return already in evidence, upon which he had some time before the trial extended the cost price of each item by the pound, dozen, etc., and also the gross price. These cost prices he had obtained by taking the original purchase prices of the articles from his cost book and price lists kept by himself, and adding to them the freight and insurance, apportioned by percentage. He testified that he knew the prices stated, and that the calculations were correct. Counsel excepted, and now assigns error, citing Section 3375 of the Code of Civil Procedure, which provides that "a witness is allowed to refresh his memory respecting a fact by anything written by himself or under his direction at the time when the fact occurred or immediately thereafter, or at any other time when the fact was fresh in his memory and he knew that the same was correctly stated in the writing. * * *" This provision is nothing more than a declaration of the common-law rule, and the memorandum used by the witness was clearly such as is permissible under it. The question for the court was not whether the memorandum was primary evidence, but whether it was made under such circumstances that it would aid the memory of the witness in testifying to matters of which he had knowledge. The fact that it was gathered from other memoranda kept by the witness was no ground of objection to its use, it appearing that these had been made at or near the time the purchasers were made, and the prices paid were still fresh in the memory of the witness. (*Calloway* v. *Varner,* 77 Ala. 541, 54 Am. Rep. 78; *Denver & Rio Grande Railroad Co.* v. *Wilson,* 4 Colo. App. 355, 36 Pac. 67; *Erie Preserving Co.* v. *Miller,* 52 Conn. 444, 52 Am. Rep. 607; *Com.* v. *Ford,* 130 Mass. 64, 39 Am. Rep. 426; *Marcly* v. *Shults,* 29 N. Y. 346.) The evidence showing the original cost of the goods was not conclusive as to their

value, but was competent both as to substance and as to the
manner of its production. The memorandum was also of ma-
terial aid in expediting the hearing by enabling the witness
to state the cost of each item, without stopping to make a calcu-
lation. It was within the discretion of the court to permit
this course.

4. At the close of the examination of this witness, the
memorandum referred to was admitted in evidence over the
objection of the defendants, for the purpose of showing the cost
of the goods. This ruling was clearly erroneous, though, per-
haps, it did not result in prejudice to defendants; everything
which it tended to show being already before the jury. The
evidence was wholly incompetent and immaterial, and should
have been excluded. So far as the items of goods were con-
cerned there was no controversy. The sheriff's return showed
what they were. The value of them depended upon the testi-
mony of the witness, who spoke from knowledge upon that
subject, and could not be shown by mere memoranda used by
a witness as an aid to his memory.

5. Among the instructions submitted to the jury were the
following paragraphs upon the burden of proof:

"The burden is upon the plaintiff to show that at the times
alleged he was the owner of, and entitled to the possession of,
the goods, wares and merchandise in controversy, and that at
said time the defendant John H. Zimmerman, as sheriff, wrong-
fully and unlawfully levied upon, sold and disposed of the
said property, to the damage of the plaintiff. The burden is
also upon the plaintiff to show that the goods, wares and mer-
chandise in controversy were of any greater value than one
thousand dollars, and that he has expended any sum necessarily
in the pursuit of the said property, or in an effort to recover
the same or the value thereof.

"The burden is upon the defendants to show that at the time
of the levy and sale and disposal of the said property by the
said John H. Zimmerman, as sheriff, the goods, wares and
merchandise levied upon, sold and disposed of were the prop-

erty of, and were owned by, A. B. Hamilton, the judgment debtor in the judgment upon which the execution was issued, under which the sheriff, John H. Zimmerman, claims to have sold and disposed of said property."

The first of these instructions is a correct statement of the law upon the issues involved in the case, which are the ownership of the property and its value. In cases of this character, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary. Therefore the obligation rests upon him to sustain this burden by a preponderance of the evidence; that is, he must show by a preponderance of the evidence that he has a right superior to that of the defendant, and that the value of the property or the interest therein in question is greater than that admitted by the defendant. Hamilton being apparently in the exclusive possession, and therefore *prima facie* the owner at the time the levy was made, the endeavor on the part of the defendants to show title in him was but one mode of meeting and rebutting plaintiff's claim, and, after presenting their evidence, they would be entitled to a verdict, if the whole of the evidence upon this issue did not show a 'preponderance in' plaintiff's favor. (*Finch* v. *Kent,* 24 Mont. 268, 61 Pac. 653.) The defendants were not under obligation to produce any evidence until plaintiff had made out a *prima facie* case, and then to go no further than to produce sufficient evidence to show an equipoise. The burden, therefore, rested upon the plaintiff throughout. These are elementary principles, applicable to all cases where there is an issue as to title, whether the defendant asserts title in himself or in a third person.

The second paragraph quoted is not only in direct conflict with the first, but it is wrong in principle. By it the jury were told, in substance, that, unless the defendants could show title in Hamilton by a preponderance of the evidence, the plaintiff must prevail.

6. Appellants have assigned in their brief many errors based upon rulings of the trial court limiting the right of the

·cross-examination of witnesses. In most instances these rulings, if erroneous, were cured by the subsequent admission of the evidence thus sought to be brought out. We shall not attempt to notice any particular instance. We deem it sufficient in this connection to say that the statute (Code of Civil Procedure, Sec. 3376) permits a wide range for cross-examination, and the courts should incline to extend, rather than to restrict, the right. Properly understood, the right extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy.

No point has been made, either in argument or the briefs ·of counsel, as to the liability in this action of the defendants who are sureties upon the official bond of defendant Zimmerman. We therefore express no opinion upon that question.

The judgment and order appealed from are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*