CHESTNUT, RESPONDENT, *v.* SALES, APPELLANT.

(No. 3,063.)

(Submitted January 20, 1912. Decided January 27, 1912.)

[121 Pac. 481.]

*Claim and Delivery—Livestock — Complaint — Demand—Statute of Frauds—Continued Change of Possession—Evidence—Attorneys—Misconduct—Argument—New Trial—Affidavits—Newly Discovered Evidence—Insufficiency—Judgment.*

Claim and Delivery—Complaint—Necessary Allegations.
   1.   The complaint in an action in claim and delivery, in order to state a cause of action, must not only allege ownership or right of possession in plaintiff, but also a wrongful seizure and detention of the property by defendant.

Same—Complaint—Demand.
   2.   Where the original taking was wrongful, the complaint in a claim and delivery action need not allege a demand; the allegation of a wrongful taking is sufficient.

Same—Statute of Frauds—Continued Change of Possession—Livestock.
   3.   *Held,* that a continued change of possession of livestock for a period of five months was sufficient to satisfy the requirement of section 6128, Revised Codes, in that respect relative to transfers of certain personal property; a change of possession for a reasonable length of time, *i. e.,* such a period of time as will preclude the idea that the sale was a colorable one, being sufficient.

Same—Ownership—Evidence—Inadmissibility.

4. Testimony that it was the common understanding in the community that one of the parties to an action in claim and delivery was the owner of the property in dispute, to-wit, certain livestock, was properly excluded.

Same—Attorneys—Argument—Misconduct—Nonprejudicial Error.

5. Where the fact that the real party in interest in a claim and delivery action was a corporation which had attached the property in question had been brought to the knowledge of the jury during the trial, a remark of counsel during argument adverting thereto *held* not prejudicial error.

Same—New Trial—Newly Discovered Evidence and Affidavits—Insufficiency.

6. Affidavits filed in support of a motion for a new trial, which did not tend in any substantial degree to weaken the winning party's case nor to strengthen that of his opponent, *held* insufficient to warrant the granting of a new trial.

Same—Judgment.

7. A judgment in a claim and delivery action that the party entitled thereto shall have the possession of the property in controversy, or in case the property itself cannot be recovered, then its value, was proper under section 6760, Revised Codes.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

ACTION in claim and delivery by Ben Chestnut, against A. H. Sales, as sheriff of Gallatin county. Judgment for plaintiff, and defendant appeals from it and an order denying his motion for a new trial. Affirmed.

*Mr. Walter Aitken* submitted a brief in behalf of Appellant, and argued the cause orally.

The vital issue in the case was as to the *bona fides* of the transaction between Terrill and Chestnut in the alleged sale of the mules, and any facts that would tend to enlighten the jury on that issue should have been brought out. The defense was based on fraud in law and fraud in fact; and unless the alleged sale of the mules was accompanied by actual and continued change of possession, it was conclusively presumed to be fraudulent. (Rev. Codes, 6128.) Any fact or circumstance tending to throw light on the true character of the transaction was admissible. (20 Cyc. 764–772; *Hesthal* v. *Myles*, 53 Cal. 623; see, also, note to 76 Am. Dec. 504, as authority that the change of possession must be such as to give evidence to the

world of the claims of the new owner; *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707.)

The reference by counsel for respondent in his argument to the jury to an indemnity bond given by the Belgrade Company to the sheriff was irregular and clearly reversible error, and was not cured by the admonition of the court upon objection by appellant. In view of the very dubious character of the evidence in support of plaintiff's case, the remarks of counsel for respondent were plainly intended to influence and inflame the jury by considerations wholly extraneous to the issue involved. (*Coe* v. *Van Why,* 33 Colo. 315, 80 Pac. 894, 3 Ann. Cas. 552; *Bartell* v. *Griffin,* 47 Colo. 569, 108 Pac. 171; *Bliss* v. *Walcott,* 40 Mont. 491, 135 Am. St. Rep. 636, 107 Pac. 423.) Arguments of counsel which seek to inflame the prejudices of the jury by references to matters of common knowledge outside of the issue are ground for reversal where harm may fairly be inferred to have resulted. (*Railway Co.* v. *Reddick,* 139 Ill. App. 160; *Freedman* v. *Press Pub. Co.,* 64 Misc. Rep. 85, 117 N. Y. Supp. 946; *City of Shawnee* v. *Parks,* 26 Okl. 665, 110 Pac. 884; 38 Cyc. 1497.)

We submit that under the testimony of respondent's own witnesses, and of himself, there was no such "immediate" change of possession, "actual" change of possession, and least of all "continued" change of possession as is required by the statute (Rev. Codes, sec. 6128), and by the rule as laid down, and ever since consistently followed, by this court in the case of *Dodge* v. *Jones,* cited above. (See, also, *O'Gara* v. *Lowry,* 5 Mont. 427, 5 Pac. 583; *Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219; *Dickey* v. *Davis,* 39 Cal. 565; *McClain* v. *Buck,* 17 Cal. 320, 14 Pac. 876; *Cook* v. *Rochford* (Cal.), 12 Pac. 568; *Stevens* v. *Irwin,* 15 Cal. 506, 76 Am. Dec. 500; *Gould* v. *Huntley,* 73 Cal. 399, 15 Pac. 24; *Kennedy* v. *Conroy* (Cal.), 44 Pac. 795; *Wilson* v. *Walrath,* 103 Minn. 412, 115 N. W. 203, 24 L. R. A., n. s., 1127; *Hesthal* v. *Myles,* 53 Cal. 623; *Gray* v. *Corey,* 48 Cal. 209; *Love* v. *Hill,* 21 Okl. 347, 96 Pac. 623; *Israel* v. *Day,* 41 Colo. 52, 92 Pac. 698; *Johnson* v. *Emery,* 31

Utah, 126, 86 Pac. 869; *Grocery Co.* v. *Harris,* 28 Okl. 715, 116 Pac. 185; 20 Cyc. 541 *et seq.*) All of the authorities cited hold, in effect, if not in terms, that when the property is susceptible of it, there must be an actual, open and notorious change of possession, indicated by such outward and visible signs as give notice to all the world that the title to the property has passed to the vendee, and that the vendor's control over it has ceased; that such possession must be exclusive and permanent as against the vendor.

*Mr. Geo. D. Pease,* for Respondent, submitted a brief and argued the cause orally.

To maintain an action in claim and delivery, plaintiff must plead and prove his right to the immediate possession of the property at the time of the commencement of the suit. This plaintiff has done. The complaint is therefore sufficient, in this respect. (Cowdery's Forms and Precedents, 1895 ed., p. 386; *Woodworth* v. *Knowlton,* 22 Cal. 164; *Bach, Cory & Co.* v. *Montana Lumber & Produce Co.,* 15 Mont. 345, 39 Pac. 291; *People's Savings Bank* v. *Jones,* 114 Cal. 422, 46 Pac. 278; *Olson* v. *Thompson,* 6 Okl. 74, 48 Pac. 184; *Fredericks* v. *Tracy,* 98 Cal. 658, 33 Pac. 750; Cobbey on Replevin, sec. 94; *Cameron* v. *Wentworth,* 23 Mont. 70, 57 Pac. 648; *Chan* v. *Slater,* 33 Mont. 155, 82 Pac. 657; *McGregor* v. *Lang,* 32 Mont. 568, 81 Pac. 343.)

In the absence of a showing that the jury are influenced by any improper remarks of counsel, they will not warrant a new trial. (*Tucker* v. *Cole,* 54 Wis. 539, 11 N. W. 703; *Daniels* v. *Weeks,* 90 Mich. 190, 51 N. W. 273; *Fogel* v. *San Francisco Ry. Co.* (Cal.), 42 Pac. 565, 46 Am. Dig. 1055; *Easterly* v. *Gater,* 17 Okl. 93, 87 Pac. 853, 10 Ann. Cas. 888; 29 Cyc. 774.) The determination of the trial court as to whether a new trial shall be granted on the ground of misconduct of the counsel is a matter for the sound discretion of the court, and it will not be disturbed except for clear abuse of discretion. (*Denver City Tram. Co.* v. *Nicholas,* 35 Colo. 462, 84 Pac. 813; *Jung*

v. *Theo. Hamm Brewing Co.,* 95 Minn. 367, 104 N. W 233; *King* v. *C. M. & St. P. Ry. Co.,* 138 Iowa, 625, 116 N. W. 719; *Vogt* v. *Baldwin,* 20 Mont. 322, 51 Pac. 157.)

: The following cases hold that remarks similar to those made in the case at bar are not reversible error: *De Long* v. *Muskegon Booming Co.,* 88 Mich. 282, 50 N. W. 297; *Gulf, C. & S. F. Ry. Co.* v. *Fox,* 6 S. W. 569; *Wegner* v. *Second Ward Savings Bank,* 76 Wis. 242, 44 N. W. 1096; *Thompson* v. *Johnston Bros. Co.,* 86 Wis. 576, 57 N. W. 298; *Dikeman* v. *Arnold,* 83 Mich. 218, 47 N. W. 113; *Cheltenham Stone & Gravel Co.* v. *Gates Iron Co.,* 124 Ill. 623, 16 N. E. 923; *Daly* v. *Melendy,* 32 Neb. 852, 49 N. W. 926.

It is a well-settled principle of law that where an officer has levied upon property in the possession of a stranger to the writ, in order for him to justify he must not only produce the writ, but must also show that it was regularly issued as provided by law.   (*Jones* v. *McQueen,* 13 Utah, 178, 45 Pac. 203.)

And when the officer seeks to justify upon a levy of property found in the possession of the defendant, he must produce the writ and show that it was issued by a court or officer having lawful authority to issue it, and that it is in legal form.   (*Id.*) No writ of attachment was introduced in evidence, and consequently the defendant did not justify his action in taking the property.

MR. JUSTICE SMITH delivered the opinion of the court.

1. This is an action in claim and delivery to recover the possession of two mules, or their value in case delivery cannot be had.   The plaintiff prevailed in the court below, and defendant appeals from the judgment and also from an order denying his motion for a new trial.   The cause was tried to a jury. The defendant, Sales, is the sheriff of Gallatin county, and seized the animals by virtue of a writ of attachment against one Terrill.   The complaint alleges that "on the 11th day of March, 1911, and prior thereto, plaintiff was and now is the owner and entitled to the possession" of the two mules; that

"the defendant is wrongfully in the possession of the same and since the 15th day of March, 1911, has wrongfully and unlawfully detained the same from the plaintiff; * * * that before the commencement of this action and about the 15th day of March, 1911, the plaintiff demanded of the defendant, in writing the possession of said mules; * * * that on the 11th day of March, 1911, defendant unlawfully seized and took possession of said property." The complaint was filed on [1] March 27, 1911. In order that the complaint state a cause of action, it must not only allege ownership or right of possession in the plaintiff, but it must allege the wrongful seizure and detention of the property by the defendant. (*Gallick* v. *Bordeaux,* 31 Mont. 328, 78 Pac. 583; *Frank* v. *Symons,* 35 Mont. 56, 88 Pac. 561; *Hickey* v. *Breen,* 40 Mont. 368, 106 Pac. 881.) These necessary allegations are found in the complaint. But, it is said, there is not any allegation that the plaintiff was the owner or entitled to the possession of the property on March 15, 1911, the date of the demand. There is, however, an allegation that defendant unlawfully seized the property on March 11, 1911, and since March 15, 1911, has wrongfully and unlawfully detained possession of the same, from the plaintiff. These allegations, we think, when read in connection with the averment that a demand was made on March 15, 1911, are a sufficient compliance with the rule that the complaint must allege a wrongful seizure and detention by the defendant, when both are relied on to state a cause of action. When the original [2] taking is wrongful the complaint need not allege a demand, and a complaint alleging merely a wrongful taking is sufficient. (34 Cyc. 1474; *Ladson* v. *Mostowitz,* 45 S. C. 388, 23 S. E. 49.) The rule laid down in *Cameron* v. *Wentworth,* 23 Mont. 70, 57 Pac. 648, and *Chan* v. *Slater,* 33 Mont. 155, 82 Pac. 657, that plaintiff must plead his right to the immediate possession of the property at the time of the commencement of the suit, was complied with.

2. It is contended that the evidence does not support the verdict. As the cause was decided for the plaintiff it must be

presumed that he established those facts which the evidence on his part fairly tended to prove, and that every disputed question of fact was resolved in his favor. There are, however, so far as the main points of the case are concerned, few contradictions in the evidence. Plaintiff testified that on the 7th day of June, 1910, he bought the mules of one Barnard; after getting possession he worked them for awhile and then sold them to Terrill; on September 8, 1910, he bought them back from Terrill, giving him a check for $310 and credit on an old account, for $90; he then put them to hauling grain in charge of one Gastineau, whom he hired to drive them; hauling was done for Stiles, Duncan and Johnson; at this time plaintiff was at Lake Basin and the mules were at Belgrade; Gastineau accounted to plaintiff for what he earned with the mules and plaintiff paid him wages; Gastineau hauled grain under this arrangement until about the 1st of December, 1910; plaintiff wrote and told him to put the mules in a pasture and paid for the pasture, where the mules remained until December 18, 1910, when at his direction they were put in another pasture belonging to his brother Hiram; they remained in this pasture until February 18, 1911, plaintiff paying for the pasturage, on which latter date he personally took them to Belgrade. He also testified: "I thought at first I would ship them to Lewistown with two horses belonging to me, but I only had a job for one team. Mr. Terrill then said if I would leave them there he would take care of them for me for the use of them, so I let him have them; I said, 'All right; if you will take care of them for the use of them until I get a job for them, you can have the use of them'; he was to pay for their feed until I got a job for them. That arrangement with Terrill was made about the 18th of September [February?]. At that time I told him if he was offered my price, $440, that is, before I could get a job for them, then for him to sell them. He took the mules under that arrangement and kept them until the sheriff attached them on the 11th day of March; I was in Lewistown when they were attached. At the time I bought these mules back from

Mr. Terrill on or about the 8th day of September, 1910, I rented a stable from Charlie McDonald—kept them at Charlie McDonald's stable at Belgrade; I kept the stable about a month and a half; I paid for the feed of those mules and the two head of horses that Gastineau worked. I did not make the contract with Stiles to haul grain; Terrill made the contract— either him or Frank Miller; Stiles knew that I was in the transaction when we put the teams on to hauling. He paid Gastineau for the hauling and did not pay any to Terrill for me. I was in Lake Basin. Terrill never paid me anything on that account; he was hauling on the same grain at the same time. Every man that I hauled grain for with the mules, through Gastineau, paid me or Gastineau direct. There was no payment to Terrill for me that I know of. He never sent me any money and I never authorized him to collect any money for me for any grain hauling. During that time Gastineau said he hauled some grain for J. W. Black. That was my work; I got the money for it from Gastineau. I don't know whether he got it from Black or Terrill. I authorized Gastineau to make contracts; told him to haul grain as long as he could get any hauling to do. During the time he was hauling grain I did not authorize Terrill to sell the mules. I wrote and told him after he got through hauling with them to sell them then—I don't know when it was—it was after he got through hauling. He wrote and told me they were getting along nicely with the hauling—didn't say anything in particular about the mules. Gastineau worked independent of him. They just appeared to be working on the same job together. I borrowed a wagon from Mr. McDonald and one from McNiece. It was their wagons that were in my possession. I heard Terrill put the mules up for sale, but I didn't authorize him to do that; I didn't know when he was going to have a sale. After the sale was over, I heard that he put them up. Terrill's sale was on November 22. The mules were in Gastineau's possession at that time. I guess Terrill had some teams on what jobs I did. My brother told me he offered the mules for sale. During the time the

mules were in Terrill's possession, after the 18th of February he had authority to sell them if he got what I asked for them."

Gastineau testified: "During the time that I was using the mules I was working for the plaintiff and he was paying me. After the 8th of September and as long as I had them, the mules were in my possession. Terrill had nothing to do with them. I was not working for him in any capacity and I did not accept any orders from him. Terrill told me to go to Black's; he collected the money for the job and paid me."

Stiles testified: "Terrill engaged to haul the grain, in this way: He said: 'I want to put in two four-horse outfits to haul,' and that was one of the teams that the mules were put on. Gastineau was driving them. The first payment that was made was to Terrill, but he said it was for Ben Chestnut. Besides Terrill and Gastineau, Brownell, Saisbury and Miller were hauling. All of these kept track of the amount of grain each hauled, and the tickets were delivered to me and showed upon their face who hauled the grain."

Wilbarn testified: "Last fall on my place I pastured two mules and two horses and collected the pasturage from Ben Chestnut."

Hiram Chestnut, plaintiff's brother, testified: "I think I kept the mules about a month and then Ben Chestnut came and got them and settled for their keep and care while I had them. He told me I could put them up for sale and sell them if I could get the right price, $500, for mules and harness."

Brown testified for the defendant: "As auctioneer I held a sale for Terrill; sold this team of mules; it was Terrill's sale and when I put them up I thought they were Terrill's. I told Gastineau, 'I want to buy those mules,' and he said, 'You see Terrill and you can get them.'"

Defendant also offered in evidence a paper signed by Terrill which reads as follows:

"March 13, 1911.

"Regarding the span of mules attached by the Belgrade Co. Ltd. will say that the said mules belong to Ben Chestnut and

does not belong to me and I have had no claim on them whatever since the said Ben Chestnut bought them; only being hired to feed them the last three weeks; these mules were bought from me and paid for about the 10th of October, 1910.''

Plaintiff's counsel admitted that if Mr. Black were present at the trial he would testify that in November, 1910, he made a contract with Terrill for the hauling of Black's grain and paid Terrill for it, and that he knew nobody else in the transaction; also that Terrill, in the hauling of said grain, used the mules in controversy and ·said to Black that the mules were his and that he owned them.

Appellant contends that upon the foregoing state of facts the case comes clearly within the provision of section 6128, Revised Codes, relating to fraudulent conveyances, ''and therefore the question became one of law for the court and not one of fact for the jury.'' Counsel says in his brief: ''There may be some question as to whether or not there was an 'immediate' change of possession; likewise a question as to the 'actual' change of possession, but there can be no question whatever that there was no 'continued' change of possession. And we are not contending that the 'continued' change of possession contemplated by the statute is such that the property sold shall never again come into the possession of the vendor. The fallacy of such a contention was plainly pointed out in the case of *Dodge* v. *Jones*, 7 Mont. 121, 14 Pac. 707; but the admitted facts in this case lead irresistibly to the conclusion that there was no such change of possession as is necessary to make the transaction good against the creditors of the vendor according to the rule laid down in that case.'' We quote from the opinion of Mr. Chief Justice McConnell in the case cited by counsel: ''The statute provides that there shall be an 'immediate' delivery, and there shall be an 'actual' change of possession, and this change shall be a 'continued' one. But continued how [3] long? We think for a reasonable length of time,—such a length of time as will preclude the idea that the sale is a colorable one.''

In the present case the jury has found that the sale was followed by an "immediate" delivery and an "actual" change of possession. They also found, by their verdict in favor of the plaintiff, that there was a "continued" change of possession. Was this finding justified? We think so. If there was a change of possession at all it continued for over five months. We think this sufficient to satisfy the statute, as a matter of law, under the circumstances shown by the record. Moreover, the jury was repeatedly advised by the court that before they could find in favor of the plaintiff they must determine that there was an immediate delivery of the property, followed by an actual and continued change of possession.

3. Plaintiff was asked on cross-examination: "Was it generally known that you were the owner of the mules?" Stiles was asked: "Didn't you suppose Gastineau was working for Terrill?" The witnesses were not allowed to answer. It is now contended that "testimony covering the common understanding [4] of the community as to the ownership of the property in controversy was competent." *Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884, and *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805, are cited as authority for the contention. These cases simply hold that a wide range for cross-examination should be permitted. *Dodge* v. *Jones, supra,* is also cited to the point. In that case the opinion of the court in *Stevens* v. *Irwin,* 15 Cal. 503, 76 Am. Dec. 500, is cited with approval, wherein Mr. Justice Baldwin said: "It [possession] must be such as to give evidence to the world of the claims of the new owner." The case falls far short of holding that the general understanding in the community is competent evidence. The public generally might not, and probably would not, know anything of the facts. Whether the possession is such as will give evidence to the world of the claims of the new owner is a question to be decided by the jury after hearing the facts in the instant case.

Defendant offered to prove by the witness Brown "that during all the time that the mules were driven by Gastineau and up to the time of the attachment, it was generally under-

stood and believed in Belgrade and in the country where the mules were being used and stabled, that said mules were the property of Terrill and nobody else." The court refused to receive the evidence, and error is assigned on the ruling. What has just been said disposes of this assignment.

4. During the course of the argument of plaintiff's counsel, Mr. Aitken, defendant's attorney, addressing the court said: [5] "The counsel for the plaintiff having referred to an indemnifying bond alleged to have been given by the Belgrade Co., Ltd., to the defendant, and having stated to the jury that the Belgrade Co., Ltd., [defendant?] wouldn't be out anything if it [he?] lost, the counsel for the defendant excepts to the remarks of counsel and respectfully asks the court to instruct the jury to disregard them." The court: "Gentlemen of the jury, I don't remember exactly the remarks as stated, but the issue to be determined in this case is: Who was the rightful owner of the property on the date that the attachment was made? The sheriff stands as the defendant in this case; of course, the testimony is there that it was attached by him on a claim of the Belgrade Company, and the other issue would be determined in case you find that the plaintiff Ben Chestnut was in possession of the property, and what damage he would sustain by them keeping the property during that time." We think this ruling was sufficient to cover the request of counsel. Moreover, we are not satisfied that any prejudice could result from information thus conveyed as to who was the real party interested in defending the action, in view of the fact that the jury already had knowledge that the Belgrade Co., Ltd., was the attaching creditor. No *verbatim* transcript of the remarks of counsel is in the record, and in the absence of knowledge on our part of what was actually said, we must presume that the trial court correctly ruled.

5. The court instructed the jury (Instruction 5) that if they found for the plaintiff, they could allow him the value of the use of the mules from March 15, 1911, to the time of the trial (May 16, 1911), less the expense, if any, of feeding and

caring for them. The jury allowed $108, and it is claimed that this finding is not justified. Plaintiff testified that the value of the use of the animals was two dollars per day. Our attention has not been directed to any evidence touching the expense of keeping them. They were held by the defendant for about sixty days. We think the finding was justified.

6. In support of his motion for a new trial, defendant presented the affidavits of George Moody and T. S. Stiles. Moody declared that Gastineau delivered a load of grain for Stiles at [6] the Fisher Mill in Belgrade on the morning of September 10, 1910, at about the hour of 9 o'clock, and that he was driving the mules at the time. Stiles made affidavit that Gastineau hauled some of his (Stiles') grain to the Fisher Mill on September 10, 1910, and that said grain must have been loaded at the Stiles farm on the 9th of September. Not anything set forth in either of these affidavits, including the elevator receipt dated September 10, 1910, attached to that of Moody, tends in any substantial degree to weaken the plaintiff's case or strengthen the defendant's. The elevator receipt rather has a tendency to corroborate the evidence of plaintiff's witnesses. It recites: "Received of T. S. Stiles, by Chestnut—G—," evidently referring to the plaintiff and Gastineau.

7. The verdict rendered reads as follows: "We, the jury in the above-entitled action, find the issues in favor of the plaintiff, and find that the plaintiff is entitled to the recovery of the personal property described in the complaint, or its value, which is fixed and assessed by us at the sum of $440; and we further find that the plaintiff is entitled to damages assessed by us at the sum of $108." The judgment recites "that the plaintiff do have and recover of the defendant the possession of the mules [describing them]; and in case delivery cannot be had of said property, then that plaintiff do have and recover of the defendant the sum of $440, the value of the property." It is contended that the verdict does not support the judgment, [7] for the reason that the former gives the right to pay the value and retain the property, while the latter provides for the

payment of the value, only in case a delivery cannot be had. The judgment is a proper one in a case of this nature. The statute, section 6760, Revised Codes, provides, *inter alia,* that if the verdict of the jury in an action for the recovery of specific personal property be in favor of the plaintiff, the jury "shall find the value of the property." The purpose of such an action is to recover the specific property in controversy, and it is only in case a delivery cannot be had that the value becomes material. It is the duty of the court to provide, in its judgment, that in case the property cannot be recovered, the party entitled thereto shall, in lieu thereof, recover its value. This was done in the case at bar. The section of the statute just cited also provides that failure to find all the facts mentioned therein shall not invalidate the verdict.

We find no error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and. MR. JUSTICE HOLLOWAY concur.

Rehearing denied February 16, 1912.