COBBAN, APPELLANT, v. HECKLEN, RESPONDENT.

(No. 1,468.)

(Submitted May 8, 1902.    Decided December 8, 1902.)

*Appeal—Findings—Defects — Exceptions—New Trial—Sale of Land—Oral Contract—Principal and Agent—Ratification —Estoppel — Statute of Frauds—Part Performance—Evidence—Trial by Court—Harmless Error.*

1.  Code of Civil Procedure, Sections 1114, 1115, 1116, have to do only with findings which omit matters necessary or proper to be stated, and relate to exceptions for deficiencies or omissions, and not for what is contained in the findings.

2.  Under Code of Civil Procedure, Section 1171, Subd. 6, providing that a new trial may be had on the ground of "insufficiency of the evidence to justify the verdict or other decision," a notice of intention to move for new trial on the ground that the evidence was insufficient "to justify the findings and judgment" is sufficient, since the words "and judgment" serve no purpose, they may be rejected, and so far as the question of the insufficiency of the evidence to justify the decision is ground for a new trial, the word "findings" is equivalent to the word "decision."

3.  The authority of an agent to contract to sell land in August, 1894, was not required to be in writing, and could be shown by oral testimony, or any evidence legitimately raising the inference of agency; since Civil Code, Sections 2185, 3085, and Code of Civil Procedure, Section 3276, requiring such authority to be in writing, did not take effect until July 1, 1895.

4.  Under Compiled Statutes, 1887, Fifth Division, Section 221, and Code of Civil Procedure, Section 3275, providing that nothing in the requirements that contracts for the sale of land shall be in writing (Compiled Statutes, 1887, Fifth Division, Sections 219, 220; Code of Civil Procedure, Section 3276) shall be construed to abridge the power of any court to compel the specific performance of an agreement in case of part performance, a principal, without writing, may be estopped to deny an oral contract of sale, made by his agent, after part performance, and specific performance may be decreed, though a mere ratification of such contract must be in writing.

5.  A contract to sell one acre out of a larger tract of land is definite and certain after the purchaser has selected and gone into possession of one acre of such tract.

6.  A contract to sell land is reasonable (so far as price is concerned) when the price for which it is sold is not disproportionate to its value.

7.  An oral contract to sell land, which has been partly performed, is mutual, for both parties are reciprocally bound,—the one to convey, and the other to pay the purchase price.

8.  Where an oral contract for the sale of land has been so far partly performed as to take the case out of the statute of frauds, such part performance vitalizes it, and by relation makes its terms obligatory from the beginning.

9.  Where the owner of an undivided portion of a tract of land authorized his agent to sell a piece of such tract, and after such sale such owner acquired the entire legal title to such piece by partition, he held such title for the benefit of his vendee, and could enforce performance of the contract.

10.  A co-owner of a placer claim, for himself and as agent of the other owners, including plaintiff, by oral agreement sold one acre thereof to defendant, the deed to be delivered when patent was obtained, and the purchase price to be then paid.. Defendant, under such agreement, entered into possession, and improved such acre. Thereafter plaintiff was informed of such agreement, and assured defendant that it would be carried out, and, relying on the agreement and such assurance, he made further valuable improvements. Two years thereafter such claim was partitioned by such owners. Plaintiff, thereby acquiring the entire legal title to such acre, brought ejectment to recover such acre. *Held*, that there was sufficient part performance to take the agreement out of the provisions of Compiled Statutes, 1887, Fifth Division, Section 219, requiring contracts for the sale of land to be in writing.

11.  Under Code of Civil Procedure, Section 3265, Subd. 3, providing that whenever a party has deliberately led another to believe a particular thing true, and to act on such belief, he cannot be permitted to falsify it, plaintiff was estopped to deny the validity of such oral agreement, and held such legal title for the benefit of defendant.

12.  Where, on a trial before the court without a jury, inadmissible evidence is received over objection, but it, as compared with the evidence properly received, was so trifling and unimportant as not of sufficient moment to affect the result, the error was presumptively harmless, and it will be presumed that the trial court disregarded such evidence.

13.  Where defendant in ejectment claimed to have taken possession and made valuable improvements relying on an oral contract of sale and plaintiff's assurances that he would make a deed on obtaining a patent, it was error to exclude the question, on cross-examination of defendant, whether he had not contributed to a fund for the purpose of breaking the patent under which plaintiff held.

14.  The rejection of proper evidence will require a new trial, unless the supreme court is satisfied that the result would not have been different if the evidence had been received.

15.  The right of cross-examination must be liberally interpreted and freely exercised. Doubt respecting the limits to which cross-examination may go ought usually, if not always, to be resolved against the objection.

*Appeal from District Court, Silver Bow County; J. B. Leslie, Judge.*

ACTION by George Cobban against Samuel Hecklen. From a judgment for defendant and order denying a new trial, plaintiff appeals. Reversed.

### STATEMENT OF THE CASE.

Action to recover possession of a parcel of ground included within the boundaries of the Summit Valley placer mining claim. The amended complaint states, in substance, that the plaintiff is, and since the 22d day of July, 1897, has been, the owner and entitled to the possession of the land demanded, and that the defendant wrongfully and without plaintiff's consent

obtained, and still withholds from plaintiff, the possession thereof.

By his answer the defendant pleaded two defenses and an equitable counterclaim. The first defense consists of a general denial. In the statement of the second defense the following new matter is, in substance, averred: In August, 1894, the plaintiff, one W. F. Cobban, hereinafter called Cobban, and two other persons, were the owners in common of the Summit Valley placer mining claim, parcel of which is the land demanded by the plaintiff. While they were so the owners, and on August 15, 1894, Cobban, who was their agent, and who was for himself and as such agent in possession of the entire claim, embracing 120 acres, orally agreed to sell to the defendant for the price of $100 that part of the claim described in and demanded by the complaint, being less than one acre in area. The price—which was the reasonable value of the land contracted for—was to be paid upon delivery of a deed from the owners. Immediately thereafter Cobban, for himself and his co-owners, delivered possession to the defendant, who was induced by Cobban to take possession and begin the erection of improvements thereon, and he did enter and begin to and did improve the land by erecting upon it a dwelling house, sheds, outhouses, and other betterments, inclosing it with a substantial fence. One of the conditions of the agreement for the sale was that the defendant should have the right immediately to enter upon and take possession and improve the land. By virtue of said right granted by Cobban for himself and his co-owners, the defendant entered and took possession, and, relying upon the contract of sale and agreement to deliver the deed, made valuable improvements thereon. Defendant has been in peaceable and actual possession, owning and claiming to own the land, to the knowledge and with the consent of the plaintiff, ever since August 15, 1894, and as such owner erected valuable improvements thereon, with plaintiff's knowledge and consent. In July, 1895, plaintiff ratified the agreement of sale, and agreed with the defendant to fulfill its terms, and to deliver to him a good and sufficient deed of conveyance for the price fixed by Cobban. Relying upon the

ratification and upon the promise of plaintiff to execute the deed, the defendant continued to occupy and improve the land, and thereafter erected valuable improvements upon the same; the value of all improvements being the sum of $1,500. The plaintiff never paid or offered to pay to the defendant the value of the improvements, or any sum on account thereof. At different times before the commencement of the action the defendant tendered to the plaintiff and Cobban $100, the purchase price, and demanded a deed. On July 22, 1897, the plaintiff became, and now is, the sole owner of the legal title to that parcel of ground which Cobban contracted to sell, subject, however, to the rights therein of this defendant. At the time of his entry the parcel of land in controversy did not exceed in value $100. Because of the plaintiff's acts, the defendant made serious alterations in his plans, expending large sums of money in reliance thereon, and no compensation in damages would be adequate for the loss of the land and improvements thereon. At all times since August 15, 1894, defendant has been, and is now, able and ready to pay the purchase price agreed upon, and tenders to the plaintiff, and deposits in court for his use and benefit, the sum of $100. The plaintiff holds the mere legal title to the land for the defendant, who is, and since August 15, 1894, has been, the owner, and in possession and entitled to possession thereof. By reason of the facts set forth, the plaintiff is estopped from claiming any interest in or any possession of the land contracted to be sold and occupied and possessed by the defendant, and is estopped from denying the authority of Cobban to make the sale to the defendant. The counterclaim repeats all the allegations of the affirmative defense; and the defendant prays that the plaintiff be adjudged to be trustee for him of the legal title to the real estate in controversy, and that plaintiff be required to make to the defendant a deed of conveyance therefor, and for general relief.

In reply the plaintiff denies every allegation of the answer except those admitted by the reply to be true. He admits that on August 15, 1894, and until the 22d day of July, 1897, he was an owner in common of the placer claim, and that the parcel

of land described in the complaint and answer lies within the boundaries thereof; that on July 22, 1897, he became and now is the sole owner of the Summit Valley mining claim; that the defendant has made improvements upon the land in controversy, for which the plaintiff has never offered to pay; but avers that the improvements were made without right or authority.

The cause was tried without a jury. The following facts were either admitted, or their existence not seriously controverted: During all of 1894 the plaintiff, Cobban, and others, were the owners in common of the Summit Valley placer mining claim, for which a receiver's receipt had been issued. Cobban was engaged in the real estate business, and acted as agent for his co-owners. One purpose of acquiring the property was to sell it for town lots or in acres. About the 15th of August, 1894, the defendant, being desirous of owning a home of his own, in pursuance of an oral contract with Cobban entered into possession of the parcel of land in dispute, comprising less than one acre, fenced it, and built a dwelling house and other structures thereon. Since that time he has been in the exclusive possession of the land, asserting ownership, and has occupied it as a home for himself and his family. On May 28, 1895, the patent for the placer claim issued to the plaintiff and his co-owners. In July or August, 1895, the plaintiff and the defendant had a certain conversation, after which the defendant added other betterments. On July 22, 1897, the land embraced in the placer entry was partitioned, and a tract including the demanded parcel was selected by the plaintiff, who ever since has had the legal title to it. Before the action was brought, the defendant tendered to the plaintiff $120, as the purchase price, with interest, and kept the tender good. The defendant testified that between the 4th and 15th of August, 1894, he was introduced to Cobban by one Hammer; that the defendant and Cobban then and there agreed by word of mouth that the defendant was to buy one acre of the Summit Valley placer claim at the price of $100, with the privilege of as many more adjoining acres at the same rate as he might desire to purchase; that Cobban said he had either a patent or a receiver's receipt; that the

price was to be paid upon delivery of a deed; that Cobban took him to the land, showed him where he wished the house to stand, and pointed out the ground, which the defendant inclosed with a fence, and placed permanent and valuable improvements thereon, worth $1,200; that his motive in going upon the land and making the improvements was to get a home, and cease paying rent; and that, relying upon the agreement with Cobban, he took possession and made the improvements. He stated further that in July or August, 1895, after the fence and the greater part of the other improvements had been made, the plaintiff and Cobban went to his home, where they had a conversation; that Cobban introduced the plaintiff to the defendant, saying, "This is Mr. George A. Cobban. He is an uncle of mine, and we own the ground together, and he wanted to come down and see you. We have talked this over, and this is the ground you are to have for $100 an acre." The defendant answered by saying to the plaintiff, "I am waiting for my deed, so I can make other improvements on this ground." Plaintiff replied: "Oh, we own it together, and whatever W. F. Cobban has done here is all right." Defendant then remarked that he desired to make other improvements, and plaintiff responded, "All right, I will be able in ten days or two weeks to give you a deed to this ground." The defendant's wife then said that she and her husband "would be glad to have a deed, so as to know just where we stand, and we want to make some other improvements," in response to which the plaintiff told her to make the improvements, and assured her that the deed would be made. The defendant testified also that the valuable improvements afterwards made were added because of these assurances. Between July, 1895, and September, 1897, the plaintiff often passed by the defendant's home. The defendant further deposed that in September, 1897, the plaintiff told him that, if he would pay "a little rent until we get the title to this land, and until we get divided up on this land, I am ready to make you people on this flat here your deeds;" saying he was willing to carry out the contract of sale made by Cobban, which, as he for the first time insisted, provided for the payment of rent. Thereafter the de-

fendant added about $25 worth of betterments. His version of this conversation is corroborated by the testimony of his brother. Hammer—seemingly a disinterested witness—testified that in August, 1894, he interviewed Cobban for the purpose of ascertaining whether Cobban had land for sale which the defendant could buy for a home; that Cobban told the witness he could "locate" the defendant on the Summit Valley placer claim, and sell him an acre for $100; that the defendant, at the suggestion of the witness, went with him to Cobban's office, where Cobban told the defendant that he (the plaintiff) and others were the owners of the claim, for which a patent had not then been issued; that he had full control of it, and authority to act for the owners; that he would sell him an acre for $100, would take him to the claim, locate him thereon, and, when a patent was received, he would see that the deed was made; that defendant accepted the offer, went upon the claim, and selected the parcel of land which he has occupied ever since; that at the time of the agreement $100 an acre was the reasonable value; and that the improvements cost $1,500. Cobban testified: That he had general oral authority from the plaintiff and the other owners to make agreements to sell land situated on the Summit Valley placer claim, and that he had, before the transaction with the defendant, made other oral agreements to sell, which were always performed by the plaintiff. That the claim had been secured through the efforts of the witness. "My authority was never disputed on that ground by anybody, not until within the last two years [1897-1899]. I was allowed to go ahead and do whatever I chose with the ground. I was the one that won the ground for them in the first place. They would not have gotten it if it hadn't been for me. Whatever sale I made of the ground was immediately ratified by all the owners." That the parcel of land in dispute was worth $75 or $100 in 1894. Cobban corroborated the plaintiff and Hammer as to the agreement for the sale, saying, however, that it was his impression that the proposition was to lease to the defendant at 50 cents a month (which had not been demanded or paid), with the privilege of purchasing at the price of $100 when the patent was issued; and

that the defendant himself, in the presence and with the approval of Cobban, selected the piece of land which he desired to buy. With respect to what took place in July, 1895, his testimony was also corroborative of the defendant's. He testified that he had informed the plaintiff of the terms of the agreement with the defendant, and that the plaintiff understood them; that the plaintiff told the defendant that the agreement was "all right," and made no objection to the defendant's adding improvements; that the plaintiff confirmed the oral contract; that there was not any agreement among the owners of the claim that none of the land should be sold until a patent was obtained, but there was an agreement that no deed should be made until after the patent issued. "We could sell the ground, and give a lease on it,—give a contract to sell and deliver deeds. If we did not procure a patent and perfect a title, then the understanding with the parties with whom I contracted and myself was that they were to get off, provided anybody else got a better title than we did." The defendant's wife testified that in July or August, 1895, the plaintiff and Cobban went to the land in dispute, which was then inclosed with a fence, and on which stood valuable improvements; that Cobban there told plaintiff that he had agreed to sell to the defendant the land for $100, and had agreed to give a deed for it; that she said that she and the defendant would like to have the deed, so they could make improvements, and that plaintiff told defendant and her "to 'go right ahead, and make any improvements you want to,' and that he would give us our deed in the course of ten days or two weeks, or somewhere near that, or as soon as possible, and for us to go right ahead. The improvements talked of at the time was our dwelling house we had built there. We were to have an acre of ground, and that acre Mr. W. F. Cobban pointed out, and told us to build there; and he said we should have that shaft for a well. This was said in my presence at this time when we were talking the thing over." Afterwards the defendant added two rooms to the house. She further testified that in 1896 the plaintiff told her he would be ready in a few days to make the deed, to which she answered that she and defendant were very anxious

to get it. As a witness for the plaintiff, one of the owners testified that she had never given Cobban authority to sell for her any interest in the placer claim. The plaintiff himself also denied that he ever authorized Cobban to contract for the sale of any part of the claim. His version of the conversation of July, 1895, is this: On the way to the defendant's house Cobban told the plaintiff that he had leased a piece of the land to the defendant. The plaintiff answered that on the piece was a certain mining shaft which disclosed quartz. Cobban said that the defendant had cleaned the shaft, and was using it as a well. The plaintiff suggested going to see it, and when they got to the house plaintiff remarked to the defendant, "You have quite a place here," and defendant answered: "Yes. W. F. [Cobban] sold me an acre of ground here for a hundred dollars." To this the plaintiff made no answer, but turned to Cobban, and said to him: "How about this? You told me you had leased the ground." Cobban answered, "I leased it, and agreed to give Mr. Hecklen the first chance to buy it," and plaintiff replied, "Don't you know that you have got no right or authority to contract any ground; that we agreed we would not sell any until we got our patent?" Cobban rejoined, "Well, it don't make any difference," and the plaintiff remarked to Cobban, in defendant's presence, "If I owned that ground, and had title to it, I wouldn't take a hundred dollars for the well alone." Further on in his testimony he varied the version somewhat by saying that all Cobban said in defendant's presence about the matter was that he had given the defendant the first privilege of buying the lot inclosed by him, and did not mention the giving of a lease. He admits that he did not make any objection to the defendant's statement as to the contract of sale, or direct his conversation to the defendant. He denied both the conversation testified to by the defendant's wife and the conversation of September, 1897, as detailed by the defendant and his brother. As to the latter denial he is corroborated by one Lindsey. He denied having written any letter inquiring whether Cobban could sell ground in the placer claim, or with reference to any sale of any ground thereon; but on cross-examination he admit-

ted writing a letter in September, 1895, wherein he asked Cobban at what price he was offering acre lots in the claim, and suggesting that they should not be sold for less than $200 an acre, and $100 for half an acre, mineral reserved. This letter was received in evidence.

The court found in favor of the defendant upon every material issue, and decreed him to be the equitable owner, and the plaintiff to hold the legal title in trust for him. The plaintiff was directed to make conveyance. From the order denying his motion for a new trial and from the judgment the plaintiff has appealed.

*Mr. E. B. Howell,* and *Mr. E. N. Harwood,* for Appellant.

There are certain requirements which a contract must possess before a court of equity will render a decree compelling a specific performance of it. Among these are the following: (a) It must be definite and certain in its terms and limitations. (b) It must be complete. (c) It must be reasonable. (d) There must be a clear understanding and a positive assent on the part of each party. (e) It must be mutual. (22 Am. & Eng. Ency. Law, p. 1006 ff.) The contract sought to be enforced by defendant fails to comply with any one of these requirements. (*Croasdale* v. *Lanigan,* 129 N. Y. 604; 22 Am. & Eng. Ency. Law, pp. 1007, 1008, 1013, 1016; *Lasher* v. *Loeffler,* 190 Ill. 150; Civil Code, Sec. 4416, Subd. 6, Sec. 4417; *Coop. Association* v. *Phillips,* 56 Cal. 539, 546; Civil Code, Secs. 2125, 4412; *Breckenridge* v. *Crocker,* 78 Cal. 529, 536; *Magee* v. *McManus,* 70 Cal. 553; *Banks* v. *Weaver,* 48 Atl. Rep. 515; *Palmer* v. *Gould,* 144 N. Y. 671; *Olsen* v. *Lavell,* (Cal.), 27 Pac. 765; *Jackson* v. *Torrence,* 83 Cal. 521; *Cooper* v. *Pena,* 21 Cal. 404, 411; *Sturgis* v. *Galindo,* 59 Cal. 28, 31.)

The agency of W. F. Cobban to make the contract in controversy was not established. The burden of proof to show such agency was upon the defendant; he wholly failed to prove it by a preponderance of evidence, or by any evidence. (Civil Code, Secs. 2185, 3085, 3086; Code of Civil Procedure, Sec. 3274;

*Hall* v. *Wallace,* 88 Cal. 434; *Lamme* v. *Dodson,* 4 Mont. 560; *Videau* v. *Griffin,* 21 Cal. 390; *Hanford* v. *McNair,* 9 Wend. 54; *Bank of Deer Lodge* v. *Hope M. Co.,* 3 Mont. 146; *First Nat'l Bank* v. *Hall,* 8 Mont. 341.)

The elements necessary to constitute an estoppel were not present. (Code of Civil Procedure, Sec. 3264, Subd. 3; *Ferris* v. *Coover,* 10 Cal. 631; *Alexander* v. *Kerr,* 2 Rolle, 90; *Crest* v. *Jack,* 3 Watts, 239; *Carr* v. *Wallace,* 7 Watts, 400; *Printup* v. *Mitchell,* 63 Am. Dec. 258; Bigelow on Estoppel, 5th Ed. p. 594; *Bringard* v. *Stelwagen,* 41 Mich. 54.)

As to the degree of proof necessary to establish a parol contract for the sale of land, the authorities are uniform that it must be clear and convincing. A mere preponderance of the evidence will not suffice. (*Rice* v. *Ridgely* (Idaho), 61 Pac. 290; Am. & Eng. Ency. Law, on "Specific Performance," Vol. 22, 984; *Aday* v. *Nichols* (Ala.), 52 Am. Dec. 225; *Forrester* v. *Flores,* 64 Cal. 24; *Blum* v. *Robertson,* 24 Cal. 129; *Forrester* v. *Maginnis,* 89 Cal. 264; *Printup* v. *Mitchell* (Georgia), 63 Am. Dec. 258; *Robbins* v. *McKnight* (N. J.), 45 Am. Dec. 406; *Hudson* v. *Layton* (Del.), 48 *Id.* 167; *Johnson* v. *Clancy* (Ind.), 28 *Id.* 45; *Wagonblast* v. *Whitney* (Ore.), 6 Pac. R. 399; Story's Equity Jurisprudence, 765, 766; *Robbins* v. *McKnight,* 45 Am. Dec. 406; *Aday* v. *Ehols,* 52 Am. Dec. 225; *Hudson* v. *Layton,* 48 Am. Dec. 167; *Blum* v. *Robertson,* 24 Cal. 143; 2 Am. & Eng. Ency. Law, 2d Ed. p. 424; Parsons on Contracts, Vol. 2, 793, note; *Morris* v. *Moore,* 11 Humph. 433; *Steel* v. *Smelling Co.,* 106 U. S. 456; *Lombard Inv. Co.* v. *Carter,* 34 Pac. 209; *Grant* v. *Idle,* 85 Cal. 418; *Armstrong* v. *Lowe,* 76 Cal. 616; *Treat* v. *DeCilis,* 41 Cal. 202; *Carstens* v. *McReavey* (Wash.), 25 Pac. Rep. 471; 1 Am. & Eng. Ency. Law, 2d Ed. pp. 1005, 1006.)

*Mr. M. J. Cavanaugh,* for Respondent.

MR. JUSTICE PIGOTT, after stating the case, delivered the opinion of the court.

1. Some contention is made by the defendant to the effect that the findings cannot be reviewed here, because the plaintiff

did not challenge them as defective; and he invokes Sections 1114, 1115, and 1116 of the Code of Civil Procedure. These sections are not applicable. They have to do only with findings which are *defective;* that is, which *omit* matters necessary or proper to be stated. Exceptions thus provided for lie on account of *deficiencies* or *omissions* and not for what is *contained* in the findings. Such is the clear meaning of the sections. This interpretation was recognized and approved in *Yellowstone National Bank* v. *Gagnon,* 25 Montana Reports, on page 271, (64 Pac. 664). In *Currie* v. *Montana Central Railway Co.,* 24 Montana Reports, 123, (60 Pac. 989), the last paragraph but one may be misunderstood unless it is considered with the opinion as a whole. To state the law accurately, the paragraph, if standing alone, should read thus: "Under the prevalent doctrine of implied findings, the judgment appealed from will not be reversed for *defective findings,* unless requests and exceptions were made and saved in accordance with Sections 1114, 1115, and 1116 of the Code of Civil Procedure."

The notice of intention to move for a new trial is attacked because one of the grounds stated therein is that the evidence was insufficient "to justify the findings and judgment and that the same are against law." Subdivision 6 of Section 1171 of the Code of Civil Procedure provides that a new trial may be had upon the ground of "insufficiency of the evidence to justify the verdict or other decision, or that it is against law." Counsel's point is that the notice is directed to the findings and judgment, instead of the decision. But the words "and judgment," since they serve no purpose, may be rejected. A somewhat similar objection, as appears from the brief of the respondent in that case, was made in *Arnold* v. *Sinclair,* 12 Montana Reports, 248, (29 Pac. 1124), but the court disregarded the objection, and reversed the order upon the ground that the evidence was insufficient to justify the findings. The court was doubtless of opinion that the objection was a refinement of technicality. So far as the question of the insufficiency of the evidence to justify the decision is ground for a new trial, the word "findings" is equivalent to the word "decision," for a new trial is the re-

examination of an issue of *fact* after trial and decision.  Under
some circumstances a decision may consist of findings of fact
and conclusions of law drawn therefrom; but a new trial may
not be granted because the evidence does not justify such con-
clusions, nor because they do not follow from the facts found.
To warrant a new trial upon the ground of insufficiency of the
evidence, the findings of fact (express or implied) or the ver-
dict must, in the opinion of the trial court, be against the weight
of the evidence, or must be unsupported by any substantial evi-
dence.

There is no merit in either objection.

2.   The plaintiff specifies as error the ruling of the court ad-
mitting evidence tending to prove that Cobban had oral au-
thority from him to make an agreement for the sale of the land
to the defendant.  He argues that authority in an agent to make
such an agreement must be in writing, and cites Sections 2185
and 3085 of the Civil Code and Section 3276 of the Code of
Civil Procedure.  These sections became law on July 1, 1895.
Cobban made the agreement in August, 1894,—nearly a year
theretofore,—at which time written authority was not necessary
to the validity of an agent's contract of sale.  So far as we are
advised, nothing in the statute of frauds then in force with re-
spect to real property (Sections 217, 219, 220, 228, Fifth Di-
vision, General Laws, Compiled Statutes of 1887), nor in the
common law, required the agent to be clothed with authority in
writing to *contract* to sell and convey land.  Prior to July 1,
1895, the agency might have been established by direct oral
evidence of the appointment, or by inference from the acts,
letters, or conduct of the parties, or from their relations, the
one to the other, or from all combined; in short, from any evi-
dence legitimately raising the inference of agency.  (Fry on
Specific Performance of Contracts (3d Am. Ed.), Sec. 509,
and cases there cited; *Coles* v. *Trecothick,* 9 Ves. 250; *Johnson*
v. *Dodge,* 17 Ill. 433; *McWhorter* v. *McMahan,* 10 Paige, 386;
*Rutenberg* v. *Main,* 47 Cal. 219; *Worrall* v. *Munn,* 5 N. Y.
234, 55 Am. Dec. 330; *Dykers* v. *Townsend,* 24 N. Y. 57;
*Moody* v. *Smith,* 70 N. Y. 599; 1 Reed on Statute of Frauds,

Sec. 379, and cases there cited.) The court was, therefore, right in admitting the evidence. This disposes also of the point that under Section 3086 of the Civil Code the authority of Cobban to bind the plaintiff by a contract to convey must have been ratified by him in writing.

3. When Cobban and the defendant entered into the oral agreement of 1894, Sections 219 and 220 of the Fifth Division, General Laws, Compiled Statutes of 1887, were in effect. These declare that every contract for the leasing for a term longer than one year, and every contract for the sale of land, or of any interest therein, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party by whom the lease or sale is to be made, or by his agent lawfully authorized. As has been said, the contract was oral, and we may concede that a ratification of the oral contract could be made only in writing. (Section 3086, Civil Code.) But, while a mere ratification of such contract must be evidenced by a writing, the ancient rule that equitable estoppel need not be so evidenced is too well established and generally known to require argument or citation of cases in its support. So with part performance of an oral contract for the sale of land. Nothing contained in the statute of frauds abridges the power of courts to compel the specific performance of such oral contracts. (Section 221, Fifth Division, General Laws, Compiled Statutes of 1887; Section 3275, Code of Civil Procedure.)

4. The plaintiff contends that the contract, in its terms, was not definite, certain, or reasonable, and that its obligation was not mutual or reciprocal. The testimony of the defendant, his wife, his brother, and Hammer tended to show that the contract was definite, certain, and complete. From the evidence adduced, the court found that the contract was one for the sale of an acre of land out of a larger tract. This was reduced to a certainty by the election and choice of the defendant. "If a man grants twenty acres, parcel of his manor, without any other description of them, yet the grant is not void, for an acre is a thing certain, and the situation may be reduced to a certainty by the election

of the grantee." (3 Bacon's Abridgement, 307.) It was reasonable, for the price for which it was to be sold was not disproportionate to its value. It was mutual, for both were reciprocally bound, the one to convey, the other to pay the purchase price, as soon as the defendant so far partly performed as to take the case out of the statute. True, the oral agreement was originally invalid,—it was unenforceable,—but the part performance vitalized it, and by relation made its terms obligatory from the beginning. If all the owners empowered Cobban to contract, they could have enforced the agreement against the defendant by compelling him to pay the purchase price upon tender of a deed conveying full title. After the partition of July 22, 1897, the plaintiff, holding the entire legal title, might then have done so. Even if the other owners did not authorize Cobban to contract to sell, the plaintiff would not be without obligation, for there was ample evidence that he had clothed Cobban with power to act for him in that behalf, and when the legal title vested in him it was held for the benefit of the defendant. The plaintiff could then have enforced performance by the defendant.

5. The case was tried upon the theory that the plaintiff was estopped to assert title as against the defendant, and that he held the legal title in trust for the defendant. The court found: "That on or about the 15th day of August, 1894, said W. F. Cobban, for himself, as co-owner in said claim, and as agent for the other co-owners therein, entered into an agreement with the defendant, whereby he sold to the defendant the premises described in defendant's cross-complaint for the sum of $100, which the defendant agreed to pay upon the delivery of the deed; and that said deed was to be delivered when a patent was obtained for said placer claim from the United States government. That said W. F. Cobban, as such co-owner and agent, aforesaid, took the defendant to the premises, and pointed the same out to him, and authorized him to enter into the possession thereof, and to occupy and improve the same; and that defendant had no possession of said premises prior to said time. That at said time the defendant desired to purchase said premises for

the purpose of building a home for himself and family, and that immediately after said agreement was made he entered and took possession thereof, and inclosed the same with a substantial fence, and has ever since occupied the same. That the defendant was induced to enter upon said premises by reason of the contract and agreement with said W. F. Cobban aforesaid, and in reliance thereon; and that, had it not been for said agreement and contract, he would not have entered thereon, or made any improvements on said premises. That, in reliance on said contract, he did enter upon said premises, and inclosed the same as aforesaid, and made permanent and valuable improvements upon the same." It also found that in July, 1895, the plaintiff was advised by Cobban of the agreement with the defendant, and that the plaintiff then assured the defendant that the agreement would be carried out, and a deed executed, and informed the defendant that he could proceed to make such improvements as he desired, and rely upon obtaining a deed; that, in reliance upon the assurances and representations of the plaintiff, the defendant made large additional, permanent, and valuable improvements upon the land, which he would otherwise not have made; that ever since July, 1895, the plaintiff had full knowledge of the defendant's possession and claim of right and title to the land, and that defendant was improving the same under such claim of right and title from the plaintiff, who never objected until September, 1897, but, on the contrary, consented thereto, and agreed with the defendant that the contract made with Cobban would be performed, and that he would give a deed; that on July 22, 1897, the owners partitioned the placer claim, and that the part assigned to the plaintiff included the land so occupied and improved by the defendant; that, if the defendant were deprived of the property by the plaintiff, he could not be compensated in damages for the improvements made or for the loss of the property. The evidence was sufficient to justify the substance of these findings, and to take the case without the provisions of Section 219, *supra*. Subdivision 3 of Section 3265 of the Code of Civil Procedure declares a very old doctrine, and a most just: "Whenever a party has, by

his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." This doctrine is applicable to the facts as found by the court. The conclusions of law that the plaintiff is estopped from asserting any interest in the real estate occupied by the defendant, that he holds the legal title in trust for the defendant, and that the defendant is entitled to a decree requiring the plaintiff to execute and deliver to the defendant a deed conveying the legal title, inevitably follow.

6. The overruling of the plaintiff's objection to the reception of certain evidence is specified as error. We are inclined to the opinion that this evidence tended (perhaps very slightly) to establish, inferentially, from the conduct of the plaintiff and of Cobban, and their relations the one with the other, implied authority in Cobban to agree with the defendant for the sale. If, however, the evidence was inadmissible, it was, as compared with the evidence properly received and considered in behalf of the defendant, so trifling and unimportant that we think it was not of sufficient moment to affect the result. Under these circumstances,—the trial having been by the court without a jury,—the error, if any, was presumptively harmless. (*Merchants' Nat'l Bank* v. *Greenhood,* 16 Mont. 395, 41 Pac. 250; *Anaconda Copper Mining Co.* v. *Heinze,* 27 Mont. 161, 69 Pac. 909.) The presumption will be indulged that the trial court disregarded such evidence. A different rule is applicable when proper evidence has been excluded, for in such case the error must be deemed to be prejudicial, unless it shall clearly appear that the admission of the evidence would not have affected the result, or justified a different decision.

7. On the defendant's cross-examination he was asked the following question: "Is it not a fact that since you have gone upon that ground you have contributed to a fund for the purpose of 'breaking' the patent under which the Summit Valley placer is held?" The court excluded the question as not cross-examination, and as irrelevant and immaterial. The question

was not subject to any one of the three objections. It was proper cross-examination; it was relevant; it was material. The defendant had testified to the making of the alleged contract with Cobban, to his entry into possession and making of improvements, and that the occupancy and betterments were induced solely by the contract. He had testified to a conversation with the plaintiff in July, 1895, wherein he informed the plaintiff of the contract, and of its terms, and that he desired a deed so that he could make other improvements; that the plaintiff promised to carry out the terms of the contract, told the defendant to make the improvements, and that the plaintiff would soon make the deed; and that the defendant placed improvements upon the land in reliance upon the assurances and representations of the plaintiff. Whatever tended to contradict, either directly or inferentially, this testimony, was cross-examination, and relevant and material evidence. If the defendant, after making the alleged contract with Cobban, and before the conversation with the plaintiff in 1895, sought to prevent the issuance of a patent to the Summit Valley placer claim, proof of that fact was admissible because of its tendency to contradict his testimony as to the terms of such supposed contract and as to his reliance upon its terms in taking possession and making improvements. If he so contributed after the supposed conversation with the plaintiff of July, 1895, to which he testified, and which the plaintiff denied, the fact of the contribution was admissible in evidence upon the grounds just stated, and also because of its tendency inferentially to contradict his version of the conversation, and to show that he did not make further improvements in reliance upon plaintiff's representations and assurances. An answer in the affirmative would have thrown light upon his statements that he had a contract of sale, and that he relied upon such contract, and upon his and his wife's version of the talk with the plaintiff in 1895. An attempt to prevent the issuance of the patent, or to cause its annulment, would, if successful, have deprived him of the full benefit of the alleged agreement, by the terms of which he was to obtain title through the patent. The evidence sought to be elicited would have been

pertinent in respect of the probability of the truth of his statements, and should have been admitted. Its weight, of course, would be for the trial court. The error was never cured, and we cannot see that it was without prejudice. Presumptively, it was harmful to the plaintiff, for the defendant might have answered the question affirmatively, in which case it would be for the court to consider how far, if to any extent, the act of the defendant was inconsistent with his claim of part performance under the supposed contract, and with his assertion of estoppel against the plaintiff. The rejection of proper evidence will require a new trial, unless we are satisfied that the result would not have been different if the evidence had been received.

We observe a tendency in district courts unduly to restrict cross-examination. This should not be indulged or encouraged. The purpose of trials of issues of fact is to bring out the whole truth, and to that end the right of cross-examination must be liberally interpreted and freely exercised. Doubt respecting the limits to which cross-examination may go ought usually, if not always, to be resolved against the objection. Although Section 3376 of the Code of Civil Procedure radically changes the common-law rule in respect of cross-examination, it "permits a wide range for cross-examination, and the courts should be inclined to extend, rather than to restrict the right. Properly understood, the right extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten a jury on a question in controversy." (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884.) These remarks are general in their application, and have no special reference to the able and learned judge who tried the case at bar.

We find but one error which is prejudicial to the plaintiff. Because of it the judgment and order refusing a new trial are reversed, and the cause is remanded.

*Reversed and remanded.*