## COMMERCIAL STATE BANK v. MOORE et al.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1915.)

No. 4411.

1. WITNESSES ☞269—CROSS-EXAMINATION—SCOPE—DISCRETION OF COURT.

The rule requiring cross-examination to be confined to the subjects of the direct examination does not limit the cross-examination to the specific details inquired of in chief, but rather permits full inquiry into the subject-matter so inquired of; the scope of which it may extend resting largely in the sound discretion of the presiding judge.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949-954; Dec. Dig. ☞269.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. WITNESSES ⬤269—CROSS-EXAMINATION—SCOPE.
    Where it was necessary to plaintiff's recovery to establish a partner-
ship between defendant and another, who, as a witness for plaintiff, tes-
tified to the partnership and to various transactions and conversations
with defendant relating thereto, it was competent on cross-examination to
interrogate the witness as to other transactions and conversations at
which third persons were present, tending to negative the existence of a
partnership.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec.
Dig. ⬤269.]

In Error to the District Court of the United States for the District
of Nebraska; Page Morris, Judge.

Action at law by the Commercial State Bank against Cass Moore
and Charles H. Tully. Judgment in favor of plaintiff against Moore,
and in favor of Tully against plaintiff, and plaintiff brings error. Af-
firmed.

Maxwell V. Beghtol, of Lincoln, Neb. (Mahin & Mahin, of Smith
Center, Kan., and Edmund C. Strode, of Lincoln, Neb., on the brief),
for plaintiff in error.

M. F. Harrington, of O'Neill, Neb. (C. C. Barker, of Alliance, Neb.,
and Burt Mapes, of Norfolk, Neb., on the brief), for defendants in
error.

Before ADAMS, Circuit Judge, and TRIEBER and REED, Dis-
trict Judges.

ADAMS, Circuit Judge. The Commercial State Bank brought this
suit in the District Court against Cass Moore and Charles H. Tully,
alleging that they were in December, 1910, copartners engaged in the
cattle-feeding business in Nebraska under the firm name and style of
"Cass Moore"; that on the 1st day of December, 1910, they executed
in their firm name of Cass Moore their three promissory notes, ag-
gregating the sum of $15,377, and delivered them to the plaintiff in
settlement of their then existing indebtedness to the plaintiff. De-
fendant Moore filed no answer, but defendant Tully did, specifically
denying that he and Moore were copartners as alleged, or that he ever
signed, executed, or delivered the notes sued on. The only trial issue
was on the answer of Tully, whether or not the two defendants were
copartners doing business in the firm name of Cass Moore as alleged.
The trial resulted in a verdict and judgment in favor of plaintiff
and against Moore, and against the plaintiff and in favor of Tully.
This writ of error is prosecuted by plaintiff to secure a reversal of
the judgment in favor of Tully.

No complaint is made of any of the proceedings of the trial except
rulings on the admission of evidence. Comparatively little of the
evidence produced at the trial is preserved in this record; enough,
however, as counsel seem to have thought, to present the legal ques-
tions involved.

It is contended that the trial court erred in overruling certain
objections of plaintiff to questions put by defendant's counsel to Cass
Moore on cross-examination when he was on the witness stand as a

witness for plaintiff. He had been fully interrogated in chief by counsel for plaintiff on the issue of the existence of the alleged copartnership. He had testified that there was such a copartnership between himself and Tully, and had upon inquiry by counsel testified to many conversations at different times and places between himself and Tully, in which he said Tully agreed to become a copartner with him, or admitted that they were copartners, or did not deny that relationship on occasions requiring him to do so if they were not, and he had testified to conversations had between himself and Tully, discussing and adopting financial measures for carrying on the partnership business. On this kind of evidence plaintiff chiefly relied to prove the copartnership. There were no written articles of copartnership, and no formal or informal written agreement of that character.

The following questions, among others, had been put to Moore without objection, and the following answers had been given by him:

"Q. Well, you did not have any money to pay that check [referring to a certain check claimed to have been given in the conduct of the firm business]? A. Well, I don't know. Charley [referring to Tully] and I went down there and put up our note for $20,000, and we had not used that out yet. Q. Well, I will come to that later. That was the note that was given to Tagg, isn't it? A. Yes, sir. Q. And the mortgage on those 1,050 cattle up in Brown county? A. Well, the mortgage on a thousand head, I think. Q. Do you even know the bank on which that 276 cattle check was drawn? A. No, sir; I told you I didn't know. Q. Now, as a matter of fact, that $20,000 note that you have injected in here was not drawn until two months after these 276 steers were bought, was it? A. I could not say, but I have kind of got it in my mind that it was drawn in May, but I don't know. * * * Q. And you said Charley Tully was interested in feeding those cattle and the sale and care of them? A. Yes, sir. Q. Kindly produce the first letter he ever wrote to you on this $70,000 deal. A. Well, we met and talked this thing— Q. Answer my question. The first letter he ever wrote to you in this tremendous transaction? A. I could not produce. Q. Produce any letter he ever wrote to you about his being a partner in that immense $70,000 feed."

As disclosed by this and other evidence, Moore had claimed that certain cattle had been purchased by himself and Tully, involving an outlay of some $70,000; that in order to pay for them they had to borrow considerable money, and did borrow $20,000 from a bank in South Omaha through the agency of Tagg Bros. Commission Company; that he had executed their note for that amount of money, signing the firm name of "Cass Moore." Tully, on the other hand, claimed that this transaction was wholly his own, and that he, on his own account, had negotiated for the purchase of the cattle and was engaged in raising money with which to pay for them; that he had already exhausted his borrowing limit in his own banks, and had to borrow $20,000 to complete the payment; that Moore had in his possession on one of his pastures a bunch of cattle belonging to him (Tully), and he (Tully) requested Moore to accommodate him by signing a note for $20,000 and executing a chattel mortgage on that bunch of cattle to secure the payment of the note, and this was done, and the note ultimately paid by Tully.

In this attitude of the case counsel for Tully, in further cross-examination of witness Moore, asked him this question:

"Did Mr. Tully tell you, about the time this $20,000 note was given in the Stock Exchange Building in South Omaha, in the presence of Frank Currie, that he had to borrow $70,000, that all the bank could loan him was $50,000, and that Tagg Bros. had suggested that he get you to sign a note for $20,000 more, and as the cattle were to be kept at your ranch in Brown county that you sign a mortgage on Tully's cattle for the other $20,000, so the bank could carry the loan?"

Counsel for plaintiff made objection thereto in the following language:

"The plaintiff objects to any conversation between Mr. Moore and his partner, unless it was in the presence of the plaintiff or some of the plaintiff's officers. These talks between two partners are hearsay purely, and we never asked about this in direct examination, not a thing; and we object for the further reason that it is hearsay, and incompetent, immaterial, and irrelevant, as to the talks between these partners after the money was borrowed and the arrangements made to borrow the money."

The objection was overruled by the court, and the plaintiff duly excepted, and now assigns the overruling of this objection for error, Counsel for defendant Tully then asked this question of witness Moore:

"You may state whether, in June, 1909, very shortly before this $20,000 note you speak of was signed, in the corridor of the Exchange Building in South Omaha, in the presence of yourself and Charles H. Tully and Frank Currie, Mr. Tully said to you, 'The bank will loan me only $50,000; that is all they will loan to any one man, and they suggest that as the steers are going to be kept at your place that you sign a note and mortgage on the steers for $20,000,' and that you then and there said, 'Why, that is all right,' and did Mr. Tully then and there say to you, 'But, of course, I will pay this note, Cass, and you will never have any trouble on it.'"

The same objection was made to this question by counsel for plaintiff, and the same ruling followed. Due exception being saved, this ruling is also assigned for error. Many other similar questions concerning this $20,000 transaction were asked of witness Moore, with the same result, and the ruling of the court as to them is also assigned for error. Counsel for Tully then asked witness Moore this question:

"Did you in December, 1909, somewhere from the 10th to the 15th, in the corridor of the Paxton Hotel in Omaha, in the presence of yourself and Charley Tully and Frank Currie, have the following conversation, or Charley say to you, 'How are you coming along with the bunch of heifers you are feeding at Long Island, Kan.?' and did you say to him, 'First rate,' and did Mr. Currie then say to you, 'How many heifers are you feeding, Cass?' And did you say to him, 'About 1,300 head.' And then did you say to Mr. Tully at the same time: 'Charley, I wish you would go into partnership with me on this heifer deal at Long Island; those heifers ought to be fed or carried along until summer, and if they are they would make some good money. I don't believe I can raise the money to feed them that long, and I would like to have you go in with me and raise the money to carry them through, and then there will be money in it for both of us.' And did Mr. Tully then say to you in the same conversation: 'No, Cass; I wouldn't go into partnership with any one. I am interested with other people who are furnishing me money, and I couldn't go into a partnership.' And did Mr. Tully say further: 'I wouldn't go into any feeding deal anyway. I never fatted any cattle in my life. I don't understand anything about the business. I sell my cattle right off the grass, and I wouldn't think about going into a feeding deal of any kind, because I don't know anything about the business?'"

Plaintiff objected to this question as incompetent, immaterial, and irrelevant, and hearsay, unless it is shown that the conversation was in the presence and hearing of some officer of the bank, and not a proper impeaching question. The court overruled this objection, and the action of the court in so doing is assigned for error. Many other questions relating to business transactions between Moore and Tully, and as to what they did and said, were asked of witness Moore, to which objections of similar character to those already indicated were made, and overruled by the court, and to every such action of the court due exceptions were saved, and these rulings are also assigned for error. Enough, however, have already been specified, we think, to fairly present the questions raised in the case.

Afterwards, witnesses Knapp, Currie, and McNutt, the persons mentioned in the questions put to witness Moore, were introduced by defendant Tully, and questions designed to contradict Moore's answer were propounded to them. To these questions plaintiff's counsel objected, on the ground that the questions put to witness Moore were immaterial, and that no impeaching questions could be predicated upon them. This objection was overruled, and due exception saved.

From the generality of the objections it is difficult for us, and must have been for the trial court, to understand exactly the particular vice imputed to them; but the brief of counsel for plaintiff in error specifies the following to be the grounds of objection relied upon by them for a reversal: (1) That the questions related to matters not inquired about in direct examination; (2) that they sought to impeach the witness on immaterial and irrelevant matters—and to these we will give attention.

[1] It is contended that the questions complained of related to matters not specifically inquired of in chief. For instance, that witness Moore was not interrogated about the $20,000 note given in the Stock Exchange Building in South Omaha and that the several questions put to him on cross-examination concerning that note were incompetent. We think this contention discloses an erroneous conception of the governing rule. That rule does not limit a cross-examination to inquiries concerning some specific detail inquired of in chief, but rather permits full inquiry into the subject-matter so inquired of. As to this no hidebound rule can be laid down. The matter must necessarily rest largely in the sound discretion of the presiding judge, subject only to the reasonable requirement that the cross-examination must be confined to the subjects of the direct examination.

[2] Conceding, therefore, that Moore was not specifically examined in chief about the $20,000 note (although it appears that he had in an early part of his cross-examination testified without objection concerning this note), it cannot be denied that he had been exhaustively examined about the existence of the alleged copartnership. He had given testimony tending to show that he and Tully had purchased cattle for the partnership; that they had had many conversations about business matters and about raising money for the prosecution of their business. In fact, most of plaintiff's proof consisted of evidence that Tully and Moore had bought, sold, and handled cattle

as copartners, and had devised means for raising the money to do so. Nothing could more effectually tend to contradict such testimony than proof that during the time the partnership was claimed to have been in existence Tully had made an individual transaction in cattle involving $70,000, and as a supporting circumstance, to establish that fact, it was clearly relevant and material to show how he raised the money to pay for them. The testimony elicited by the questions complained of had a direct tendency to deny the existence of the copartnership. There is, therefore, no merit in the objection to this class of questions on the ground that they were not germane to the subject of inquiry in chief, and the court did not err in overruling them.

Considerations of the kind just alluded to dispose of the further contention that the questions were immaterial and irrelevant, and for that reason did not afford a lawful basis for subsequently impeaching the witness. Manifestly there is nothing of merit in this. The questions were relevant to the chief issue in the case and to the dominating subject of all previous inquiry. They tend directly, and in our opinion strongly, to establish a state of facts inconsistent with the fundamental basis of plaintiff's case, the existence of the copartnership between Moore and Tully. They were therefore material and relevant, and, being so, afforded sufficient basis for subsequent impeachment.

After witness Moore had denied that statements of the kind involved in these questions had been made at the times and places specified, witnesses were called by defendant Tully to prove that they were so made. No objection was made to these questions as originally put to witness Moore, nor to the questions subsequently put to the impeaching witnesses, on the ground that the questions failed to sufficiently specify time and place, or that they were too long, intricate, and comprehensive to afford the basis for impeachment. If the latter objections had been made, doubtless counsel would have been compelled by the trial court to reform them.

Argument is made by plaintiff's counsel that the questions were objectionable because they did not inquire concerning statements made by witness Moore himself, but chiefly concerning statements made by Tully to him. We think this is without merit. The inquiry was as to conversations between Tully and Moore bearing directly upon the chief issue in the case, and it is immaterial that they were not exclusively statements of Moore himself. They appear to have been made by him, or to him, or in his presence, and so they afford a sufficient basis of competency and relevancy to subject him to cross-examination and possible impeachment.

Many other exceptions were taken to rulings of the trial court on objections to questions, and to these we have given careful consideration. They present similar contentions to those already considered, and for reasons stated no error was committed in the rulings so made.

Finding no reversible error in the case, the judgment is affirmed.