DE WITT v. SKINNER, Collector of Internal Revenue.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1916.)

No. 4313.

1. WITNESSES ⊂⇒258—EXAMINATION—REFRESHING MEMORY.

In an action against a revenue collector to recover taxes, penalties, and interest assessed against plaintiff as a manufacturer of adulterated butter, and paid under protest, it was error to permit a revenue agent, called as a witness for defendant, to read from his diary entries regarding a conversation with plaintiff as to the use of lime water in preparing butter, where the witness did not say whether he had any independent recollection of the details of the conversation, or that his memory was refreshed by the diary.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 887, 893, 895, 896; Dec. Dig. ⊂⇒258.]

2. WITNESSES ⊂⇒240(3)—EXAMINATION—"LEADING QUESTION."

The test of a "leading question" is whether it suggests or indicates the particular answer desired, and it does not necessarily make a question leading that it may be answered "Yes" or "No."

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 838; Dec. Dig. ⊂⇒240(3).

For other definitions, see Words and Phrases, First and Second Series, Leading Question.]

3. WITNESSES ⊂⇒269(1)—CROSS-EXAMINATION—SCOPE AND EXTENT.

The right of cross-examination is not confined to specific questions or details of the direct examination, but extends to the subject-matter inquired about.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 949; Dec. Dig. ⊂⇒269(1).]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Herbert M. De Witt against Mark A. Skinner, as Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

Thomas Ward, Jr., of Denver, Colo., for plaintiff in error.

John A. Gordon, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, of Denver, Colo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. De Witt sued the collector of internal revenue to recover taxes, penalties and interest assessed against him as a manufacturer of adulterated butter and against his product, and paid under protest after an unsuccessful application to the Commissioner of Internal Revenue for their abatement. A trial to a jury resulted in a verdict and judgment for the defendant, and De Witt, the plaintiff, prosecuted this writ of error.

The act of Congress applicable to the case provides:

"That 'adulterated butter' is hereby defined to mean a grade of butter produced by mixing, reworking, rechurning in milk or cream, refining, or in any

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

way producing a uniform, purified, or improved product from different lots or parcels of melted or unmelted butter or butter fat, in which any acid, alkali, chemical, or any substance whatever is introduced or used for the purpose or with the effect of deodorizing or removing therefrom rancidity." Act May 9, 1902, § 4, 32 Stat. 194.

The plaintiff conducted a creamery and butter factory at Denver, Colo. The surplus butter made by him in the summer months when cream was plentiful was put up in 200-pound cubes, carefully packed, and put in cold storage at a low temperature until fall or winter, when the supply of cream lessened and the demand for butter increased. The surplus in storage was then taken out, reworked, and put upon the market. In the process of reworking the cubes were cut into small pieces and put in a tempering vat, where they were left until they became plastic. The vat was in two compartments, one for the pieces cut from the exterior of the cubes to a depth of two or three inches and the other for the inner portions. The vat contained about 200 gallons of hydrant water raised to an appropriate temperature, into which was introduced a small quantity of lime water. When in a workable condition the pieces were removed from the vat, separately rechurned, and washed in clear water, salted, and molded into small forms for the market. The controversy was over the condition of the exterior portions of the large cubes of butter taken from the cold storage warehouse and the purpose and effect of the use of lime water. The plaintiff contended that the parts in question were sweet in fact and in odor, and that the lime water was added to the water in the tempering vat to counteract its tendency to become stagnant, and also as a preservative, like salt, to prevent the butter from deteriorating after being put upon the market. The defendant contended that the butter particles had an offensive odor and were rancid, and that within the definition of the statute the lime, an alkali, was "used for the purpose or with the effect of deodorizing or removing therefrom rancidity."

[1] A revenue agent called as a witness for defendant was permitted to read from his diary entries regarding a conversation with the plaintiff as to the use of the lime water and his purpose in using it. He had been asked to state the conversation, and, though not denied the right to refresh his memory by referring to his diary, he persisted in reading to the jury the account he had written there, part of which purported to give literally questions and answers in the conversation. Repeated objection was made that he was reading from his book, but it was finally overruled, and he was allowed to finish it. The witness did not say whether he had or had not any independent recollection of the details of the conversation, or that his memory was refreshed by the diary, and the result was his diary entries were received as independent evidence. This was error. The competency of such evidence was quite fully considered in Bates v. Preble, 151 U. S. 149, 14 Sup. Ct. 277, 38 L. Ed. 106, and the court, after reviewing its former decisions, said:

"We do not regard any of these cases as committing this court to the general doctrine that such memoranda are admissible for any other purpose than to refresh the memory of the witness."

One of the cases referred to was Vicksburg & Meridian Railroad v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299, an action by a passenger for personal injuries, in which it was held that a physician's written statement of the nature and extent of the injuries made for the information of others was not admissible in evidence, even when attached to the deposition of the physician in which he swore it was written by him and in his opinion was a correct statement.

[2, 3] One other matter remains. Though not sufficient for reversal it should be admitted that the plaintiff was unnecessarily hampered in introducing his evidence by frequent frivolous objections to questions as not cross-examination, and as immaterial—this, however, not by counsel appearing here. The test of a leading question is whether it suggests or indicates the particular answer desired. That a question may be answered "Yes" or "No" does not necessarily make it leading. McKeown v. Harvey, 40 Mich. 226, 228. The right of cross-examination is not confined to the specific questions or details of the direct examination, but extends to the subject-matter inquired about. Powers v. United States, 223 U. S. 303, 32 Sup. Ct. 281, 56 L. Ed. 448; Wilson v. United States, 232 U. S. 563, 34 Sup. Ct. 347, 58 L. Ed. 728; International Harvester Co. v. Voboril, 110 C. C. A. 311, 187 Fed. 973; Stewart v. United States, 129 C. C. A. 477, 211 Fed. 41; Commercial State Bank v. Moore, 227 Fed. 19, 141 C. C. A. 573.

The judgment is reversed, and the cause is remanded for a new trial.