### HEARD v. UNITED STATES.

### DUNN v. SAME.

(Circuit Court of Appeals, Eighth Circuit. January 23, 1919.)

Nos. 4890, 4908.

1. WITNESSES ⚖389—CROSS-EXAMINATION AS TO INCONSISTENT STATEMENT—EFFECT OF ADMISSION.

In a prosecution for stealing interstate shipments of money from an express car, where the express messenger testified against defendants, his admission that his first statement as to the robbery was false will not preclude cross-examination in detail as to his original statement.

2. WITNESSES ⚖266—CROSS-EXAMINATION.

It is no answer to a refusal to permit a full cross-examination that the party against whom the witness is called might have made him his own witness, and might then have proved by him, or by some other witness, or by some writing, the facts which the cross-examiner was entitled to draw from the testimony of his adversary's witness, for no one is bound to make his adversary's witness his own to prove facts which he is entitled to establish by cross-examination, as testimony given by a witness on cross-examination is evidence of the party in whose behalf he is called.

3. WITNESSES ⚖266—CROSS-EXAMINATION.

A full cross-examination of a witness upon subjects of his examination in chief is the absolute right, not the mere privilege, of the party against whom he is called, and a denial of such right is prejudicial and fatal error.

4. WITNESSES ⚖269(1)—EXAMINATION—CROSS-EXAMINATION.

It is the rule in the national courts that the party in whose behalf a witness is called has the right to restrict the cross-examination to the subjects of direct examination, and a violation of this right is reversible error; so, if the cross-examiner would inquire of the witness concerning matters not opened on direct examination, he must call him in his own behalf.

5. WITNESSES ⚖269(4)—CROSS-EXAMINATION.

In a prosecution for stealing from an express or mail car interstate shipments of money, where the wife of the express messenger testified for the prosecution that, after her husband made a statement to detectives,

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

he came home and told her that the robbery was a fake, and that she got one of the other defendants to tell her about it, cross-examination as to whether her husband told her that he. had been promised immunity was proper.

6. CRIMINAL LAW ⊕→424(3)—EVIDENCE—ACTS OF COCONSPIRATOR.

In prosecution against two defendants, where they were charged with stealing, etc., and conspiring to steal, from a mail or express car, interstate shipments of money, the admission of testimony by the express messenger, whom it was claimed was a party to the conspiracy, that after the robbery was effected one of the defendants paid him a sum of money as his part, is inadmissible against the other defendant, who was not present at the time.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Homer Heard was convicted of stealing and carrying away from a mail and express car three interstate shipments of money, in violation of Act Feb. 13, 1913, c. 50, 37 Stat. 670 (Comp. St. §§ 8603, 8604), and William W. Dunn was convicted of aiding, abetting, and procuring the commission of the crime, etc., and both were convicted of conspiring to commit the offense above described, and they bring error. Reversed and remanded, with directions to grant new trial.

George W. Murphy, of Little Rock, Ark. (James E. Hogue, Douglas Heard, and E. L. McHaney, all of Little Rock, Ark., on the brief), for plaintiff in error Heard.

Gardner K. Oliphint, of Little Rock, Ark. (Robert L. Rogers, of Little Rock, Ark., on the brief), for plaintiff in error Dunn.

W. H. Rector, Asst. U. S. Atty., of Little Rock, Ark. (W. H. Martin, U. S. Atty., of Hot Springs, Ark., on the brief), for the United States.

Before SANBORN and SMITH, Circuit Judges.

SANBORN, Circuit Judge. The plaintiffs in error, Dunn and Heard, were indicted, convicted, and sentenced in the court below. Their indictment contained two counts, the jury found them guilty on both counts, and the court upon both counts sentenced Heard to imprisonment in the penitentiary for three years, and Dunn to a like imprisonment for a year and a day. The first count of the indictment charged that on April 9, 1914, with intent to convert the money to his own use, Heard stole and carried away from a mail and express car three interstate shipments in three express packages of money of the Chicago, Rock Island & Pacific Railway Company, while they were in the custody of the United States Express Company, in transit from Hot Springs, Ark., to St. Louis, Mo., in violation of Act Feb. 13, 1913, 37 Stat. 670, c. 50 (Comp. St. §§ 8603, 8604), and that Dunn aided, abetted, and procured the commission of that crime by Heard, and after its commission, knowing that Heard had committed it, harbored him and concealed the commission of the crime. The second count charged that on April 1, 1914, Heard and Dunn conspired with William Ahring to commit the crime described in the first count.

[1] The trial proceeded in this way: The United States proved the

⊕→For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shipment of the three packages of money from Hot Springs to St. Louis via the United States Express Company, and the possession thereof by Ahring, its messenger, on their way between the two cities. It then called Ahring as one of its witnesses, who on his direct examination testified that prior to the theft Dunn had suggested to him the holding up of a train, and had told him that he had a man by the name of Heard that he could trust, and had subsequently said that he wanted to pull it off, but that no train was specified, and no agreement was finally reached; that on April 9, 1914, a short time before his car left Hot Springs, Heard crawled into it, and when they were near Benton, or Haskell, Heard took his knife, which was lying there, cut open the lock bag, took out the money packages, took the money out, and put it in his pocket, burned the envelope, put a piece of wood in Ahring's mouth, fastened it with a piece of cloth, put him in a packing box, and locked him in, where the porter found him when the train arrived at Little Rock, and went off with the money. On his cross-examination he testified that about the last of April or the first of May, he made his first statement about this theft to Mr. Farber, the superintendent of the express company, and to other detectives; that he then told them that two men who were strangers to him got into his car at Little Rock, that one of them pulled out a pistol and held it on him, and that they cut open the sack and took the money away from him. Counsel had extracted these facts regarding the first statement about the robbery made by the witness by means of his cross-examination, and was proceeding with it in regular course, when he asked this question:

"Q. Did you tell them that one of the men was tall and dark and wore a cap, but that his face was covered with a handkerchief and you couldn't tell about his features?"

Thereupon the district attorney objected to this question, on the ground that the witness admitted that his first statement was false, and insisted that it made no difference what he said. The court then said:

"There is no use to go into that. You can introduce it against him, if you want to. The objection is sustained, because he states that it was a false statement. You may introduce it afterwards."

Counsel for the defendant Heard excepted and said:

"Unless you let me consider them in the record, I have a few more questions to ask along the same line."

The court answered:

"You may save an exception; the objection is sustained, because he states that the statement is entirely false; that he made the statement, but that it was false."

Counsel for Heard then said:

"I except to the court's ruling, and to the statement of the court also. He has not stated that yet, your honor. He has not got to that."

As to the fact counsel for the defendant was right—the witness had not at the trial then proceeding testified to the falsity of his first

statement, and the court probably fell into its mistake, because he may have so testified at a former trial. It is also true that he did subsequently so testify at this trial. But neither of these facts extracts the serious objection to the prohibition of the cross-examination of the witness as to his contradictory statements in detail of the facts and circumstances of the robbery or larceny. The government had called him as its chief witness, and relied upon him to establish its charge. By thus calling him it had vouched for the truth of the story of the transaction to which he testified, and had subjected him to a fair and full cross-examination upon that subject. It was proper, relevant, and material cross-examination to draw forth from this witness the fact that, when the transaction was recent and his recollection was fresh, he had told a different story, one so inconsistent with that to which he had testified that both stories could not be true. That was material cross-examination, because it at once challenged the credibility of his testimony, and, the more in detail his first story was, the more incredible it rendered his evidence. Neither a witness nor a party may lawfully escape such cross-examination by his mere testimony or admission that the witness has made statements inconsistent with his testimony at the trial and that they were false. Cross-examination may not be shut off in this way. The cross-examiner has the right to prove by his adversary's witness, if he can, what inconsistent statements he has made, not only in general, but in every material detail, for, the more specific and substantial the contradictory statements were, the less credible is the testimony of the witness.

[2, 3] It is no answer to a refusal to permit a full cross-examination that the party against whom the witness is called might have made him his own witness, and might then have proved by him or by some other witness, or by some writing, the facts which the cross-examiner was entitled to draw from the testimony of his adversary's witness. No one is bound to make his adversary's witness his own to prove facts which he is lawfully entitled to establish by the cross-examination of that witness. The testimony given by a witness on his cross-examination is the evidence of the party in whose behalf he is called and the cross-examiner has the right to bind his adversary by the truth elicited from his own witness. Wilson v. Wagar, 26 Mich. 457, 458; Campau v. Dewey, 9 Mich. 417, 418; Chandler v. Allison, 10 Mich. 460, 473; New York Mine v. Negaunee Bank, 39 Mich. 644, 660. A full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, not the mere privilege, of the party against whom he is called, and a denial of this right is a prejudicial and fatal error. It is only after the right has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary. Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471, 28 L. Ed. 62; Resurrection Gold Mining Co. v. Fortune Gold Mining Co., 129 Fed. 668, 674–676, 64 C. C. A. 180, and cases there cited; Safford v. United States, 233 Fed. 495, 501, 503, 147 C. C. A. 381. The refusal of the court below to permit counsel for the defendant Heard to draw forth from the witness Ahring by cross-examination the entire statement he first made relative to the

robbery or theft too much restricted that examination and was erroneous.

[4, 5] The United States called as a witness Mrs. Ahring, and she testified that, on the Saturday morning after Ahring made his statement to Farber and other detectives, he came home and told her that the express robbery was a frame-up or fake; that he had gone to Memphis, that the detectives had asked him and he had told them everything. She further testified that on the next day, Sunday, the detectives came to her home, asked her if she would be willing to help them; that she replied that she would on account of her husband; that they wanted to know if she thought that Heard would tell her; that she answered that she did not know, but that she would try; that she would tell him that Ahring had told her, and then she thought that Heard would tell her; that she called Heard to her home, and told him that Ahring had told her that the robbery was a frame-up; that he had told her some, but that she wanted Heard to tell her all, of it, and thereupon he did tell her about it. When, during her cross-examination, counsel for Heard came to the subject of Ahring's conversation with his wife in which he had told her that the robbery was a frame-up and that he had told the detectives everything, this colloquy was had:

"Q. It was on Saturday morning that Mr. Ahring returned home from Memphis, was it not? A. Yes, sir.

"Q. And told you that he had confessed over there? A. Yes.

"Q. Did he tell you that the company or the agents over there to whom he confessed, had promised to give him immunity, or that he would not be punished if Heard or Dunn, or either of them, were convicted? A. No, sir."

Thereupon the court ruled that defendant's counsel by asking this last question had made Mrs. Ahring his witness; that he held that she could not be contradicted any more; that what Ahring told the witness or failed to tell her in that Saturday morning's conversation concerning his interview with those to whom he confessed about their promise of immunity was new matter, which must wait until the prosecution closed, when counsel for the defendant might call Mrs. Ahring as his witness and prove it. To this ruling each of the defendants excepted, and they assign it as error.

The rule on this subject in the national courts is that the party in whose behalf a witness is called has the right to restrict his cross-examination to the subjects of his direct examination, and a violation of this right is reversible error. If the cross-examiner would inquire of the witness concerning matters not opened on direct examination, he must call him in his own behalf. Philadelphia & Trenton Railway Co. v. Stimpson, 39 U. S. (14 Pet.) 448, 460, 10 L. Ed. 535; Houghton v. Jones, 1 Wall. 702, 706, 17 L. Ed. 503; Resurrection Gold Mining Co. v. Fortune Gold Mining Co., 129 Fed. 668, 674, 64 C. C. A. 180, and cases there cited; Illinois Central Railway Co. v. Nelson, 212 Fed. 69, 74, 128 C. C. A. 525; Harrold v. Territory of Oklahoma, 169 Fed. 47, 52, 94 C. C. A. 415, 17 Ann. Cas. 868.

But a fair and full cross-examination of a witness on the subjects of his examination in chief is an absolute right of the opposing party,

a denial of which is error. The scope of the proper cross-examination is determined by the subject-matters of the direct examination, and not by the precise questions or answers relative to such matters in the direct examination. When a witness is examined in chief regarding a conversation or statement concerning a given subject he may be cross-examined to bring forth the whole of that conversation, its statements and its limitations. Stewart v. United States, 211 Fed. 41, 48, 127 C. C. A. 477; Commercial State Bank v. Moore, 227 Fed. 19, 24, 141 C. C. A. 573; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; Aeolian Co. v. Standard Music Roll Co. (C. C.) 176 Fed. 811, 815. The subject-matter of this cross-examination was what Ahring told his wife about his conversation with those to whom he had confessed the theft on the day before. The United States had opened that subject-matter by introducing the testimony of Mrs. Ahring that he had told her on that Saturday morning that he had confessed to the detectives and had told them everything. This testimony gave the right to the defendants to inquire of Mrs. Ahring, on cross-examination, what he did and what he did not tell her of the conversation with the detectives in which he confessed, until they drew out from her all that her husband told her of that conversation regarding the theft and the confession; and it was permissible in that cross-examination to ask her whether or not he told her things that he did not tell her regarding this subject, as well as things that he did tell her, in order that they might ascertain the exact extent of his communication to her upon these subjects. It was therefore error for the court to limit the cross-examination to the bare statement of the witness in chief that he told her that he had confessed to the detectives and had told her everything, and to refuse to permit defendant's counsel to ask her exactly what he told her he said to the detectives and what he told her they said to him during the confession conversation regarding his conversation, and among other things whether or not he told her that they told him in that conversation that they would give him immunity, if Heard or Dunn, or either of them, were convicted.

[6] It is assigned as error by the defendant Dunn that over his objection and exception Ahring was permitted to testify that, a day or two after the money had been stolen, Heard came to his house, called him into the bathroom, and gave him some money, and said: "Here is your money; I am going to give Dunn $125." The objection was that as against Dunn, who was not present, this testimony was incompetent, because the object of the conspiracy had been accomplished before the conversation took place.

While, in cases of conspiracy, the act of one conspirator in the prosecution of the enterprise for the purpose of attaining its object is evidence against all, the act, declaration, or admission of one conspirator by way of narrative of past facts after the conspiracy has come to an end, either by success or failure in attaining its object, is not admissible against the others. Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 150 U. S. 93, 98, 14 Sup. Ct. 37, 37 L. Ed. 1010. The crime denounced by the

act of Congress was the stealing of the money from the express car while the money was in transit therein in interstate commerce. The conspiracy charged was a conspiracy to commit that crime. That crime had been committed, the object of the conspiracy had been completely attained, the money had been stolen, carried away, and ap-propriated before Heard told Ahring that he was going to give Dunn $125, and a declaration to that effect was not made and could not have been made, either to accomplish the object of the conspiracy or in the prosecution of it. It was not, therefore, admissible in evidence against Dunn. Lonabugh v. United States, 179 Fed. 476, 481, 103 C. C. A. 56.

It is assigned as error that the court admitted as evidence testi-mony to the effect that, some months before the theft charged, Dunn offered to buy of Ahring a dress, which the latter as express mes-senger had in his custody, in transit in interstate commerce in the express car. But, while the record is not clear, the court probably excluded this testimony, as it should have done, and doubtless will do at another trial.

The errors which have now been pointed out necessitate another trial in this case, and it is useless to discuss other assignments. Let the judgments against Dunn and Heard be reversed, and let their case be remanded to the court below, with directions to grant a new trial in each case.