STOCKYARDS LOAN CO. v. NICHOLS et al.

(Circuit Court of Appeals, Eighth Circuit. August 15, 1919.)

No. 5378.

1. CHATTEL MORTGAGES ⬦157(2)—IMMATERIAL EVIDENCE.

On an issue as to whether defendants had notice of a chattel mortgage on cattle before purchasing them, where a witness testified to giving such notice verbally to one of defendants, the date of a conversation between the two after the purchase, when it was not claimed that such notice was given, was immaterial, and the admission over objection of evidence to fix such date was error.

2. WITNESSES ⬦414(1)—CORROBORATIVE EVIDENCE.

Where a witness testified positively from his independent recollection as to the date of a transaction, checks which he testified were given by him at about the same time were inadmissible to corroborate his testimony as to such date.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Thomas C. Munger, Judge.

Action at law by the Stockyards Loan Company against James Nichols, William B. Miller, and William M. Brisco. Judgment for defendants, and plaintiff brings error. Reversed.

R. F. Blair, of Tulsa, Okl., and B. F. Deatherage, of Kansas City, Mo., for plaintiff in error.

William B. Moore and W. W. Noffsinger, both of Muskogee, Okl., for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and YOUMANS, District Judge.

SANBORN, Circuit Judge. The Stockyards Loan Company, the plaintiff below, loaned about $10,000 to Nichols on January 2, 1915, and Nichols then gave his note and a chattel mortgage to the loan company on his cattle to secure the payment of this debt. A copy of this mortgage was filed in the office of the county clerk of Cherokee county, Okl., where the cattle were situated, on January 12, 1915; but the filing of this copy was insufficient under the statutes of Oklahoma to give notice of the existence or of the terms of the mortgage to a subsequent innocent purchaser of the cattle for value from Nichols. Stockyards Loan Co. v. Nichols, 243 Fed. 511, 515, 517, 156 C. C. A. 209, 1 A. L. R. 547. About February 8, 1915, Nichols sold and delivered the mortgaged cattle to the defendants Miller and Briscoe, and thereafter the plaintiff by means of this action replevined them. Miller and Briscoe defended, on the ground that they had bought and paid to Nichols full value for the cattle without any notice of the chattel mortgage, or of any claim of the plaintiff to any lien upon the cattle, and the chief issue at the trial below was whether or not the defendants had such notice, before their purchase, of the plaintiff's dealing with Nichols, as would have caused a person of ordinary prudence in their situation to have made such inquiry before the purchase as would have informed him of the chattel mortgage.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The fact that some time after February 8, 1915, when Miller and Briscoe bought the cattle, they had such notice of the mortgage was conceded, and the real issue at the trial became whether they first received such notice before the date of their purchase. Upon this subject C. D. Waller testified that he and Nichols lived at Hulbert; that in 1915 he was the assistant cashier of the First National Bank of Hulbert; that about the middle or the latter part of January, 1915, and prior to the time when Miller and Briscoe bought the cattle from Nichols, Miller was at Hulbert for the purpose of buying hogs; that it was the custom of the banks to charge exchange on checks drawn upon outside banks; that early one morning Miller came into the bank to see what the bank would charge for exchange on checks, and asked him where Nichols was getting this money to buy cattle with; and he told him that he had procured a loan for Nichols from the Stockyards Loan Company, in Kansas City, on the cattle that Nichols was then buying. Upon his cross-examination, in answer to questions by counsel for the defendants, he testified that he did not know whether Miller bought any hogs that trip or not; that he was there several times during January and February, and he had other conversations with him, but no other conversation concerning Nichols and his stock buying. Asked, "Why does the fact of his coming there to purchase hogs fix January in your mind?" he answered, "Because he was over there before the time he bought the cattle, the 1st of February." Asked, "You didn't know when he bought the cattle, did you?" he answered, "I knew it by the check that was deposited there."

On the other hand, the defendant Miller testified that he never, during the middle or latter part of January, 1915, or at any other time, had any conversation with Waller, in which he asked him where Nichols was getting the money to buy these cattle with, or in which Waller told him that he had secured a loan for $10,000 from the Stockyards Loan Company, of Kansas City, on the cattle Nichols was then buying; that he was not at Hulbert in January, 1915; that he went to Hulbert about the 25th of February, stayed there until the 2d of March, and bought some hogs; that about the 25th he had a conversation with Mr. Nowlin, another officer of the bank, about the payment of exchange on checks for hogs he was going to buy; that the first time he saw Waller, knowing who he was, was on March 1, 1915; that the way he knew it was the 1st of March was by his check; that he went to the bank to pay the exchange on these checks, found Waller, and asked him to figure out his exchange, told him he would pay him, and did so; that he never had any other talk with Waller about exchange on hog checks. The witness then testified that about 20 checks made by the defendants, payable to numerous third parties, and dated from February 26, 1915, to March 1, 1915, inclusive, were the checks he gave for the purchase of hogs on which he paid this exchange, and the defendants then offered these checks in evidence. The plaintiff objected to their introduction, on the grounds that they were incompetent, irrelevant, and immaterial, and that they did not tend to support or shed any light upon any is-

sue in the case. This objection was overruled; the court received the checks in evidence, as it said, "as evidence on the date of the transaction"; the plaintiff excepted, and it now assigns this ruling as error.

[1] The pertinent issue was whether or not Miller received notice of the plaintiff's loan to Nichols upon the cattle before he and his partner bought them on February 8, 1915. Waller had testified that he gave him such notice in January, 1915, before the defendants purchased the cattle. Miller had testified that Waller never gave him any notice, but that he had a conversation with him on March 1, 1915, long after the purchase, in which Miller did not give any such notice, and that he (Miller) knew that this latter conversation was on March 1, 1915, because on that date he paid exchange on his hog checks to third persons, which were dated about that time; but the hog checks had no tendency to prove that the notice in issue was or was not given, or that it was or was not given prior to February 8, 1915.

It is contended that they were admissible to prove the date of the transaction. The date of what transaction? The only date the checks could have any tendency to prove is the date when Miller testifies he paid the exchange, and he testifies that no notice was given him by Waller on that day, and no witness comes to say that there was. That date is therefore immaterial. The only material date is the date the notice was given, and, as the checks have no tendency to indicate the date when any notice was given, they are irrelevant and immaterial to any issue in this case; nor would they have been admissible, if the date when Miller testified he paid his exchange, and received no notice, had been material.

[2] Under that supposition, if the witness Miller had testified that he knew the dates of the checks to be correct, that they were dated about the time that he paid the exchange and had the conversation about it with Waller, and that he did not recollect and could not testify at what time that conversation was, independent of the checks, then those checks might in that way have been made admissible evidence of his past recollection of the time of that conversation. Insurance Co. v. Weide, 76 U. S. (9 Wall.) 677, 680, 681, 19 L. Ed. 810; Jones on Evidence, § 883; Wigmore on Evidence, § 764. There was, however, no such qualifying testimony, and these checks were not admissible as the verified record of Miller's past recollection. They were at most memoranda permissibly usable to stimulate or revive the present recollection of the witness as to the date of his payment of the exchange and his conversations at that time. Such memoranda, although usable when properly verified to refresh the memory of the witness, are inadmissible in evidence on the offer of the party whose witness uses them to stimulate his recollection. It is not permissible to corroborate the testimony of his witness by the admission of such memoranda. Weaver v. Bromley, 65 Mich. 214, 31 N. W. 839, 840, 841; Palmer v. Hartford Dredging Co., 73 Conn. 182, 47 Atl. 125, 127; Commonwealth v. Ford, 130 Mass. 64, 66, 39 Am. Rep. 426; Friendly v. Lee, 20 Or. 202, 25 Pac. 396, 397; Com-

monwealth v. Jeffs, 132 Mass. 5, 6; Kipp v. Silverman, 25 Mont. 296, 64 Pac. 884, 887.

Moreover, these checks were inadmissible, because there was no evidence that Miller's recollection needed refreshing, no evidence that he did not recollect and could not testify to the date of his payment of the exchange and his conversation with Waller about it independently of the checks, and the absence of such proof is an insuperable objection to the introduction of such memoranda. Vicksburg & Meridian R. R. v. O'Brien, 119 U. S. 99, 101, 102, 103, 7 Sup. Ct. 118, 172, 30 L. Ed. 299; Bates v. Preble, 151 U. S. 149, 157, 14 Sup. Ct. 277, 38 L. Ed. 106; De Witt v. Skinner, 232 Fed. 443, 444, 146 C. C. A. 437; Inman v. Dudley & Daniels Lumber Co., 146 Fed. 454, 455, 456, 76 C. C. A. 659; Stewart v. Morris, 89 Fed. 290, 291, 32 C. C. A. 203; Coxe Bros. & Co. v. Milbrath, 110 Wis. 499, 86 N. W. 174, 175, 176; National Ulster County Bank v. Madden, 114 N. Y. 280, 285, 21 N. E. 408, 11 Am. St. Rep. 633.

The defendants made a motion in this case to affirm the judgment of the court below, because the bill of exceptions was not allowed in due time; but the certificate of the judge to the bill reads, "And now, and within the time allowed by the court, the plaintiff presents this its bill of exceptions, and asks that the same be allowed, signed, and certified, and made a part of the record," and in the face of that certificate this court is unwilling, upon a careful examination of the record, to hold that the court below was in error in this statement.

The motion must accordingly be denied, the judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.